UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KAMEIKA LEWIS, *individually and on behalf of all others similarly situated*, *et al.*,

                                        Plaintiffs,

                v.

PELHAM COUNTRY CLUB,

                                        Defendant.

---

No. 23-CV-6500 (KMK)

OPINION & ORDER

Appearances:

Douglas B. Lipsky, Esq.
Lipsky Lowe LLP
New York, NY
*Counsel for Plaintiffs*

Christopher B. Harwood, Esq.
Morvillo Abramowitz Grand Iason & Anello PC
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Plaintiffs Kameika Lewis ("Lewis"), Ann Pearlina Brown ("A. Brown"), Adrian

Williams ("Williams"), and Myana Brown ("M. Brown," and collectively "Plaintiffs"),

individually and on behalf of all others similarly situated, bring this putative Collective and Class

Action against Pelham Country Club ("Defendant" or the "Club"), pursuant to the Fair Labor

Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), and the New York Labor Law, § 190

et seq. ("NYLL").  (*See* Am. Compl. ("AC") ¶¶ 151–96 (Dkt. No. 13).)[1]  Among other things,

---

[1] Unless otherwise noted (as here), the Court cites to the ECF-stamped page number in the upper-right corner of each page in cites from the record.

the Amended Complaint alleges that Defendant failed to pay minimum and overtime wages to

Plaintiffs, who worked at the Club as golf caddies.  (*See generally id.*)  Before the Court is

Defendant's Motion To Dismiss the Amended Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) (the "Motion").  (*See* Not. of Mot. (Dkt. No. 22).)  For the reasons that

follow, Defendant's Motion is granted.

## I.  Background

### A.  Factual Background

Unless otherwise stated, the following facts are drawn from the Amended Complaint.

The facts alleged therein are assumed true for the purpose of resolving the instant Motion.  *See*

*Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023).

#### 1.  The Parties

Defendant is a private golf club in Pelham Manor, New York.  (AC ¶¶ 1, 15.)  The Club's

approximately 250 members must pay a one-time initiation fee, as well as annual dues.  (*Id.*

¶¶ 16–17.)

Plaintiffs each worked at the Club as golf caddies.  (*Id.* ¶ 2.)  Depending on the weather,

they would work from May to October each year.  (*Id.* ¶ 18.)  Lewis worked as a caddie at the

Club for each golf season between 2015 and 2020.  (*Id.* ¶ 85.)[2]  Williams held that position for

each golf season between 2018 and 2020.  (*Id.* ¶ 100.)  Both A. Brown and M. Brown worked as

caddies at the Club for each golf season between 2015 and 2019.  (*Id.* ¶¶ 114, 128.)  Plaintiffs

---

[2] Although Plaintiffs use the singular "caddy" in the Amended Complaint, (*see, e.g.*, AC
¶¶ 22, 25–28), the Court uses "caddie" herein, consistent with the United States Golf
Association's ("USGA") Rules of Golf, *see* USGA, Rules of Golf § XI (Definitions),
https://www.usga.org/rules/rules-and-clarifications/rules-and-
clarifications.html#!ruletype=fr&section=definitions, and notwithstanding the satirical portrayal
of country clubs in the epic film "Caddyshack," *see* https://m.imbd.com/title/tt008048 (noting
that Caddyshack is "one of the top 5 funniest movies of all time").

did not work as caddies anywhere else during their respective tenures at the Club.  (*Id.* ¶¶ 86, 101, 115, 129.)

### 2.  Caddies' Responsibilities at the Club

Defendant employs about thirty caddies at any one time, and those caddies often work exclusively at the club for multiple years.  (*Id.* ¶¶ 19, 24.)  Most of the golfers at the Club use its caddies.  (*See id.* ¶ 23.)  In terms of attire, the Club's caddies are required to wear a blue shirt, khaki pants, and a Club-provided bib with the Club's insignia.  (*Id.* ¶ 20.)

When caddies start working at the Club, they receive training from other Club caddies. (*Id.* ¶ 32.)  The caddies' duties include carrying the golf bag for one or two golfers—which is referred to as doing a "loop"—finding, identifying and retrieving golfers' golf balls; cleaning the golfers' clubs and golf balls; correcting divots on the golf course; raking sand traps after use; removing the flag from the hole on the putting green; and providing the golfers with suggestions on what club to use and information on the course when asked.  (*Id.* ¶¶ 33–34.)  At the Club, a round of golf usually lasts around four to four and a half hours.  (*Id.* ¶ 42.)  In a given day, caddies work one or two rounds.  (*Id.* ¶ 43.)

In addition to its caddies, Defendant also employed a Caddie Master whose responsibilities include, pairing caddies with a golfers; supervising caddies; interviewing, hiring, and firing caddies; scheduling caddies' hours and deciding the number of rounds they work on a given day; disciplining caddies; and discussing any member complaints about caddies with them. (*Id.* ¶¶ 26–28, 44.)

### 3.  Caddies' Work Schedules

In general, caddies arriving at the Club for work are required to check in with the Caddie Master by signing a sign-in book, so that the Caddie Master knows the caddies are available to

be assigned to a golfer.  (*Id.* ¶ 36.)  Typically, caddies arrive for work by around 6:30 a.m.  (*Id.*

¶ 37.)  And depending on when the sun goes down, caddies generally stop working between 4:00

and 6:00 p.m.  (*Id.* ¶ 38.)  Most of the Club's caddies work six days per week—from Tuesday to

Sunday—though some caddies also work on Mondays if there is an "outing" scheduled.  (*Id.*

¶ 39.)[3]  As alleged, caddies therefore tend to work between 40 and 54 hours a week.  (*Id.* ¶ 41.)

With respect to Plaintiffs' themselves, both Lewis and Williams worked 66 hours per

week at the Club during the years they worked there.  (*Id.* ¶¶ 90, 104.)  For their part, A. Brown

and M. Brown worked 57 hours per week during their respective tenures at the Club.  (*Id.*

¶¶ 118, 132.)

### 4.  Bag Fees

Plaintiffs aver that the Club does not pay its caddies any compensation at all.  (*Id.* ¶¶ 49,

91, 105, 119, 133; *see also id.* ¶¶ 50–51 ("[The Club] does not pay its [caddies] any hourly rate,

any salary, any piece rate[,] or any other form of compensation[,]" including any "overtime

premium.").)  Instead, caddies like Plaintiffs receive payment from golfers directly in the form of

so-called "Bag Fees."  (*Id.* ¶¶ 52, 54.)

More specifically, golfers pay caddies a $60 fee, as determined by the Club, for each golf

bag that they carry during a round.  (*Id.* ¶¶ 54–55.)[4]  Caddies are not able to change the Bag Fee

or negotiate a higher Bag Fee, though they do get to keep the entire Fee they are paid.  (*Id.*

¶¶ 56–58.)  Further, caddies are under no obligation to share any of the Bag Fees they receive

with the Club.  (*Id.* ¶ 59.)

---

[3] An example of an outing would be a situation where a company rents the Club's golf
course to use for a day.  (*See* AC ¶ 39.)

[4] Plaintiffs assert that caddies are usually assigned two golfers per loop.  (AC ¶ 53.)

In addition to Bag Fees, golfers may—at their discretion—tip their caddies.  (*Id.* ¶ 60.)

However, golfers do not always tip caddies in addition to paying the Bag Fee.  (*Id.* ¶ 61.)  The

Bag Fees and any additional tips constitute the sole compensation for caddies at the Club.  (*Id.*

¶ 62.)

Plaintiffs allege that no agreement existed between the Club and its caddies that the bag

fees or any additional tips from golfers would count towards the Club's wage payment

obligations.  (*Id.* ¶ 70.)  In addition, as alleged, the Club did not: keep records of or otherwise

track the Bag Fees paid to caddies; invoice golfers for the Bag Fees they paid; collect and

distribute the Bag Fees to its caddies on golfers' behalf; take steps to ensure that golfers paid Bag

Fees to golfers; or include caddies' bag fees in its gross receipts.  (*Id.* ¶¶ 71–73, 75–76, 79.)

### B.  Procedural History

Plaintiffs initiated this Action on July 27, 2023.  (*See* Compl. (Dkt. No. 1).)  On October

4, 2023, Defendant filed a pre-motion letter, seeking leave to move to dismiss Plaintiffs' initial

Complaint.  (*See* Letter from Christopher B. Harwood, Esq. to Court (Oct. 4, 2023) (Dkt. No.

9).)  Plaintiffs filed a response on October 17, 2023, indicating that they intended to amend the

Complaint.  (*See* Letter from Douglas B. Lipsky, Esq. to Court (Oct. 17, 2023) (Dkt. No. 11).)

On October 20, 2023, Plaintiffs filed the Amended Complaint.  (*See* AC.)  On November

10, 2023, Defendant filed a letter seeking leave to file the instant Motion.  (*See* Letter from

Christopher B. Harwood, Esq. to Court (Nov. 10, 2023) (Dkt. No. 16).)  Plaintiffs filed a

response on November 17, 2023.  (*See* Letter from Douglas B. Lipsky, Esq. to Court (Nov. 17,

2023) (Dkt. No. 17).)  On December 14, 2023, the Court held a pre-motion conference, during

which it adopted a briefing schedule.  (*See* Dkt. (minute entry for Dec. 14, 2023); Scheduling

Order (Dkt. No. 21).)

Pursuant to that briefing schedule, Defendant filed its Motion on January 18, 2024.  (*See* Not. of Mot.; Mem. of Law in Supp. of Mot. ("Def's Mem.") (Dkt. No. 23); Decl. of Christopher B. Harwood, Esq. in Supp. of Mot. ("Harwood Decl.") (Dkt. No. 24).)  After the Parties jointly requested—and were granted—an extension to remaining briefing deadlines, (*see* Dkt. Nos. 25–27), Plaintiffs filed their Opposition on February 27, 2024, (*see* Pls' Mem. of Law in Opp'n to Mot. ("Pls' Opp'n") (Dkt. No. 28); Decl. of Douglas B. Lipsky, Esq. in Opp'n to Mot. ("Lipsky Decl.") (Dkt. No. 29)).  Thereafter, Defendant submitted its Reply on March 12, 2024.  (*See* Def's Reply Mem. of Law in Supp. of Mot. ("Def's Reply") (Dkt. No. 30).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id*. (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[]

6

complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

### B.  Analysis

In the Amended Complaint, Plaintiffs assert seven causes of action—two arising under the FLSA and five arising under the NYLL.  (AC ¶¶ 151–96.)  With respect to the FLSA claims—which only Lewis and Williams assert—Plaintiffs allege that Defendants failed to pay them and those similarly situated the minimum wages to which they were entitled.  (*Id.*

¶¶ 180–88.)  Plaintiffs also allege that Defendants failed to pay them and those similarly situated the overtime wages to which they were entitled under the FLSA for all hours worked beyond 40 per workweek.  (*Id.* ¶¶ 189–96.)  As to the NYLL claims, Plaintiffs allege that Defendants failed: to pay overtime wages (*id.* ¶¶ 151–64); to pay minimum hourly wages (*id.* ¶¶ 165–70); to provide spread-of-hours compensation (*id.* ¶¶ 171–73); to provide wage notices (*id.* ¶¶ 174–76); and to provide accurate wage statements (*id.* ¶¶ 177–79).

In support of its Motion, Defendant asserts that the FLSA claims in the Amended Complaint must be dismissed as time-barred, because Plaintiffs have not plausibly alleged that the Club willfully violated the FLSA.  (Def's Mem. 11–18.)  In addition, Defendant argues that Plaintiffs have failed to state a minimum wage claim under the FLSA because their allegations demonstrate that they received above the minimum wage in Bag Fees alone, and relatedly, that those Fees constituted their wages rather than non-wage tips.  (*Id.* at 18–29.)  Finally, Defendant contends that, to the extent that Plaintiffs' federal FLSA claims are dismissed, the Court should decline to exercise supplemental jurisdiction over their remaining NYLL claims, which arise under state law.  (*See id.* at 29–30.)

The Court will address Defendant's arguments to the extent necessary to resolve the instant Motions.

### 1.  Statute of Limitations

The Court begins with Defendant's contention that Lewis and Williams's FLSA claims are time-barred.  (*Id.* at 11–18.)[5]  For the reasons explained below, the Court agrees.

---

[5] Again, only Lewis and Williams have raised FLSA claims in this case.  (*See* AC ¶¶ 180, 189.)  Thus, they, rather than all Plaintiffs, will be the focus of the analysis in this Section.

a. Legal Background

Although "the lapse of a limitations period is an affirmative defense that a defendant must plead and prove[,] . . . [a] court [] may dismiss a claim on statute-of-limitations grounds at the pleadings stage if the complaint clearly shows the claim is out of time." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) (alterations adopted) (quotation marks and citations omitted)). "The FLSA statute of limitations is two years for non-willful violations and three years for willful violations." *Tung v. Banzai Steakhouse Inc.*, No. 22-CV-5750, 2023 WL 5827643, at *6 (S.D.N.Y. Sept. 8, 2023) (citing 29 U.S.C. § 255(a)); *accord Cucul v. Major Cleaning, Inc.*, No. 22-CV-601, 2024 WL 2783505, at *6 (E.D.N.Y. May 30, 2024) ("The FLSA's limitations period for minimum wage and overtime claims is two years, unless the employer's violation is willful, in which case the period is three years." (quoting *Mendez v. MCSS Rest. Corp.*, 564 F. Supp. 3d 195, 208 (E.D.N.Y. 2021))).

With respect to willfulness, the Second Circuit has explained that "[a]n employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by [that statute]." *Whiteside*, 995 F.3d at 324 (quotation marks omitted) (quoting *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009)); *see also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (same). "Therefore, a plaintiff must show more than that defendant should have known it was violating the law. Should have known implies negligence or reasonable person standard. Reckless disregard, in contrast, involves actual knowledge of a legal requirement and deliberate disregard of the risk that one is in violation." *Agureyev v. H.K. Second Ave. Rest. Inc.*, No. 17-CV-7336, 2018 WL 4356731, at *2 (S.D.N.Y. Sept. 12, 2018) (quotation marks omitted); *see also Whiteside*, 995 F.3d at 324 ("Mere negligence is insufficient [to demonstrate willfulness]." (quoting *Young*, 586

9

F.3d at 207)).  Put another way, "if an employer acts unreasonably, but not recklessly, in

determining its legal obligation [under the FLSA], its action should not be considered willful."

*Whiteside*, 995 F.3d at 324 (quoting *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 39 (2d Cir. 1995)).

And, importantly, "[r]eckless disregard, in this context, 'involves actual knowledge of a legal

requirement, and deliberate disregard of the risk that one is in violation.'"  *Montoya v. Havana*

*Cent. NY 2, LLC*, No. 23-CV-111, 2024 WL 874640, at *5 (S.D.N.Y. Jan. 8, 2024) (quoting *Hart*

*v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 937-38 (S.D.N.Y. 2013)), *report and*

*recommendation adopted*, 2024 WL 871206 (S.D.N.Y. Feb. 29, 2024).  Finally, "[t]he burden is

on the employee to show willfulness."  *Pappas v. City of New York*, No. 23-CV-6010, 2024 WL

2093472, at *13 (S.D.N.Y. May 9, 2024) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132,

141 (2d Cir. 1999)).

  The Second Circuit's decision in *Whiteside* is instructive.  There, the court was tasked

with determining "whether a plaintiff must plead facts that give rise to an inference of

willfulness to invoke the three-year exception at the pleadings stage."  *Whiteside*, 995 F.3d at

320.  Although the Eleventh Circuit had concluded that "the mere allegation of willfulness

suffices for the three-year exception to apply under the FLSA[,]" the Second Circuit held—in

accord with the Supreme Court's guidance in *Twombly* and *Iqbal* regarding the pleading standard

under Rule 8 more generally—that "FLSA plaintiffs must *plausibly* allege willfulness," meaning

that "a plaintiff must allege *facts* that permit a *plausible inference* that the defendant willfully

violated the FLSA."  *Id.* at 320–21, 323 (emphases added).  In so holding, the court explained

that "'[t]he fact that Congress did not simply extend the [FLSA] limitations period [from two

years] to three years, but instead adopted a two-tiered statute of limitations, makes it obvious that

Congress intended to draw a significant distinction between ordinary violations and willful

violations' of the statute."  *Id.* at 322 (quoting *McLaughlin*, 486 U.S. at 132); *see also id.* (explaining that "willfulness operates as an independent element of claims for *willful* violation of the FLSA—a subset of FLSA claims pursuant to which an employer is subject to heightened liability" and that "[by] extending the limitations period for an additional year based upon an employer's intent, claims for willful violation of the FLSA act as 'a punitive measure' for employers who are more culpable than those who violate the statute only negligently" (emphasis in original) (citation omitted)).

With the above principles in mind, the Court turns to considering the specific allegations in the matter before it.

### b.  Application

The Complaint initiating this Action was filed on July 27, 2023.  (*See* Compl.)  So, any alleged FLSA violation must have occurred no earlier than July 27, 2021, unless such violations were willful, in which case they must have occurred no earlier than July 27, 2020.  *See* 29 U.S.C. § 255(a).  Lewis and Williams both worked at the Club only through the 2020 golf season, which, as alleged, means through October 2020.  (*See* AC ¶¶ 18, 85, 100.)  Thus, for their FLSA claims to survive this aspect of Defendant's Motion, Lewis and Williams need to have plausibly alleged that the Club violated the FLSA *willfully*.  *See Whiteside*, 995 F.3d at 323; *Cucul*, 2024 WL 2783505, at *6; *Tung*, 2023 WL 5827643, at *6.

As an initial matter, the Court notes that Lewis and William's various bald assertions that the Club "willfully" violated the FLSA, (*see* AC ¶¶ 4, 150(d), 187, 194), are plainly insufficient to plausibly plead willfulness and—indeed—are expressly foreclosed under *Whiteside*, *see* 995 F.3d at 321 ("An averment of 'willfulness' is . . . *precisely* the sort of legal conclusion that *Twombly* and *Iqbal* counsel must be supported by factual allegations at the pleadings stage.");

*see also Malcolm v. City of New York ("Malcolm I")*, No. 20-CV-9641, 2022 WL 684408, at *3 (S.D.N.Y. Mar. 8, 2022) (finding that the plaintiffs did not plausibly plead willfulness where they had alleged that the defendant "willfully failed to pay overtime compensation at all, or in a timely manner" because "[s]uch general allegations are insufficient to adequately plead willfulness for statute of limitations purposes in this Circuit"); *cf. Castillo v. Isakov*, No. 22-CV-6888, 2023 WL 6664552, at *4 (S.D.N.Y. Oct. 12, 2023) (concluding, in the context of a motion for a default judgment, that the plaintiffs' repeated assertions that the defendants' actions were "knowing and willful" were insufficient to plausibly plead willful FLSA violations (citation omitted)).

In their Opposition to the instant Motion, Lewis and Williams assert that the following allegations suffice to plausibly plead willful FLSA violations.  (*See* Pls' Opp'n 10–11.)

- "[Defendant] was aware of its requirement to pay its [caddies] minimum wage and overtime premium pay."  (AC ¶ 80.)

- "[Defendant] structured its unlawful [caddie] compensation policy with the clear intent of minimizing its labor costs."  (*Id.* ¶ 82.)

- "[Defendant] knowingly misclassified its [caddies] as independent contractors when they should have been classified as its employees and did so with the intent of covering up its statutory violations and minimizing its labor costs."  (*Id.* ¶ 84.)

- Defendant: "does not keep records of when its [caddies] start and stop working on each day"; "does not keep accurate records of the number of loops its [caddies] work in a day"; and, therefore, "knowingly disregarded and evaded its statutory recordkeeping requirements by not tracking the hours its [caddies] worked with

the intent of impeding the [caddies'] ability to determine their hours worked and there[fore] wages owed." (*Id.* ¶¶ 77–78, 83.)

The Court will analyze these allegations in turn.

As to the allegation that the Club "was aware of its requirement to pay its [caddies] minimum wage and overtime premium pay[,]" (*id.* ¶ 80), the Court concludes that this allegation is tantamount to averring that the Club *knew* that it was required to pay its caddies minimum wage and overtime premium pay. Indeed, such an allegation is "no more than [a] conclusion[,]" which is "not entitled to the assumption of truth," even at the motion-to-dismiss stage. *Iqbal*, 556 U.S. at 679; *see also Whiteside*, 995 F.3d at 323 (declining to "adopt a rule that would allow a claim that a complaint clearly shows [is] out of time to proceed through discovery upon the insertion of a single legal conclusion—indeed, a single word—into a complaint" (quotation marks and citation omitted)); *Polanco v. Regina Caterers, Inc.*, No. 23-CV-4329, 2024 WL 3553456, at *3 (E.D.N.Y. July 27, 2024) (finding the allegation that the defendants "had knowledge" that the plaintiff "performed work requiring overtime pay" was a mere "conclusory assertion" and therefore "inadequate to support an inference of willfulness"); *Castillo*, 2023 WL 6664552, at *4 (similar). Although Lewis and Williams contend that this allegation is not conclusory, they are mistaken. (Pls' Opp'n 11.) It is not often expressly recognized, but "conclusory" is defined as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based." Conclusory, Black's Law Dictionary (12th ed. 2024). And that is precisely what Lewis and Williams have done here; they have expressed the inference that the Club was aware of its purported minimum and overtime wage obligations while providing *no* facts rendering that conclusion feasible, much less plausible. That will not do, and therefore Lewis and Williams cannot rely on the allegation that the Club "was aware of its requirement to

pay its [caddies] minimum wage and overtime premium pay[,]" (AC ¶ 80), to meet their burden of demonstrating willfulness for statute-of-limitations purposes, particularly where they have failed to allege that anyone at the Club "acted in *any* manner suggesting an awareness that their actions violated or could violate the FLSA[,]" *Whiteside*, 995 F.3d at 324 (emphasis in original); *see also Sanchez v. L'Oreal USA, Inc.*, No. 21-CV-3229, 2022 WL 1556402, at \*5 (S.D.N.Y. May 17, 2022) (concluding that the plaintiff had failed to adequately allege willfulness where "[t]he [a]mended [c]omplaint include[d] only conclusory assertions that [the d]efendant . . . was aware of its overtime obligations and had a policy or practice of failing to meet them, without describing what that policy or practice [was]").

Lewis and Williams's allegations that the Club "structured its unlawful [caddie] compensation policy with the clear intent of minimizing its labor costs[,]" and that it "knowingly misclassified its [caddies] as independent contractors when they should have been classified as its employees and did so with the intent of covering up its statutory violations and minimizing its labor costs" fare no better. (AC ¶¶ 82, 84.) As above, they too generally assert nothing more than conclusions as to the legality of the Club's payment system for and classification of caddies, and the Club's alleged intent as it relates to minimizing labor costs. (*See id.*) But, again, Lewis and Williams have failed to plead any "factual content [*at all*] that allows the [C]ourt to draw the reasonable inference" that the Club allowed caddies to be paid via Bag Fees in connection with some scheme to willfully violate the FLSA. *Iqbal*, 556 U.S. at 678. In other words, because Lewis and Williams have only pled facts "that are merely consistent with [the Club's] liability, [the Amended Complaint] stops short of the line between possibility and plausibility," and [they] fail[] to demonstrate [entitlement to the three-year statute of limitations]." *Whiteside*, 995 F.3d at 323–24 (quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678)); *see also Twombly*, 550

U.S. at 570 (explaining that if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed").[6]  Indeed, courts concluding that plaintiffs have plausibly pled willfulness require more than such unadorned conclusions.  *See, e.g.*, *Pappas*, 2024 WL 2093472, at *13 (concluding that a plaintiff, an NYPD dog handler, had sufficiently pled willfulness because—beyond conclusory assertions of "willful" FLSA violations—the operative complaint alleged additional facts supporting an inference of willfulness, such as that the defendant "previously provided a retired police lieutenant with handler compensation prior to his retirement, indicating that the [defendant] was on notice of its obligations to pay [d]og [h]andlers[,]" and that agencies outside of the NYPD paid dog handlers for their work (quotation marks and citation omitted)); *Markovic v. Milos Hy, Inc.*, No. 22-CV-1412, 2023 WL 4763807, at *7 (S.D.N.Y. July 26, 2023) ("[The p]laintiffs do not just make conclusory allegations of willfulness or allege post-hoc that the pay that they received violated the FLSA[,]" but instead, "[t]hey allege that they contemporaneously raised concerns that [the d]efendants' tip pool and distribution policies resulted in the underpayment of tips," that "[t]he

---

[6] Based on other allegations in the Amended Complaint, it is not altogether clear that the Club was minimizing its labor costs through its compensation policy for caddies.  For example, by allowing caddies to keep "100%" of the Bag Fees they receive, (AC ¶¶ 58–59), it would seem that it is forgoing the opportunity to keep some portion of the Bag Fees while paying the caddies in a more traditional way, which—for FLSA purposes—could conceivably result in caddies being compensated in an amount higher than the federal minimum wage, but less than they received through Bag Fees, (*see* Def's Mem. 19 (demonstrating that, based on the allegations in the Amended Complaint, Lewis and Williams—at minimum—earned $10.91 per hour through Bag Fees during their time working at the Club, and noting that the federal minimum wage is $7.25 per hour)).

And although it certainly is not dispositive, it bears noting that more than fifty years ago, the Internal Revenue Service determined that golf clubs like Defendant are "not liable for [Federal Insurance Contributions Act] and [Federal Unemployment Tax Act] taxes with respect to remuneration paid to caddies either directly by club members or indirectly by the club acting as the agent of the members[.]"  Rev. Rul. 69-26, 1969-1 C.B. 251.  Such a long-standing policy implicitly permitting the payment structure at issue here certainly undercuts the notion that, by having caddies paid through Bag Fees, the Club was willfully violating the FLSA.

employees were told that the collected tips went missing from the restaurant's safe that was accessible to only the managers and owners," that they "requested to see [the d]efendants' tip records and sought clarification on how [they] calculated the tip amounts distributed to tipped workers," that "[the d]efendants refused to produce [the p]laintiffs with such records or information," and that "when they complained about the discrepancies, management threatened to fire everyone." (quotation marks and citations omitted)); *Malcolm v. City of New York ("Malcolm II")*, No. 20-CV-9641, 2023 WL 4298869, at *3 (S.D.N.Y. June 30, 2023) (concluding that the plaintiffs plausibly pled willfulness where they alleged that one plaintiff complained to defendants "early and often, dating back to early 2016 and increasing in ferocity as [the d]efendant's willful actions become more widespread and frequent" (citation omitted)); *cf. Hernandez v. NHR Hum. Res., LLC*, 2021 WL 2535534, at *16 (S.D.N.Y. June 18, 2021) (determining, at the conditional-certification stage, that the plaintiff alleged willfulness where the defendant-employer told employees that they "would never be paid overtime," but "forc[ed] them to work through their lunch hours . . . almost every day of the week" (quotation marks and citations omitted)).

As noted, Lewis and Williams have also alleged that the Club "does not keep records of when its [caddies] start and stop working on each day," "does not keep accurate records of the number of loops its [caddies] work in a day," and, therefore, "knowingly disregarded and evaded its statutory recordkeeping requirements by not tracking the hours its [caddies] worked with the intent of impeding the [caddies'] ability to determine their hours worked and [thus] wages owed." (AC ¶¶ 77–78, 83.) The Court likewise concludes that these allegations fail to raise the *plausible* inference that the Club "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." *Whiteside*, 995 F.3d at 324 (citation omitted). To start,

Lewis and Williams's assertions that the Club "knowingly disregarded and evaded its statutory recordkeeping requirements . . . with the intent of impeding the [caddies'] ability to determine their hours worked," (AC ¶ 83), standing alone, are impermissibly conclusory for the reasons stated above.  Moreover, those conclusions do not plausibly follow from the facts that the Club neither tracks its caddies working hours, nor record the number of loops they work.  (*See id.* ¶¶ 77–78.)  At most, these allegations "permit . . . an inference that Defendant[] [acted] negligently . . . which, without more, is insufficient [to establish willfulness]."  *Whiteside*, 995 F.3d at 324 (declining to infer willfulness from the allegation that the plaintiff "was asked for a period of time to perform job responsibilities typically performed by non-exempt employees even though he was classified as exempt"); *see also Fisher v. Hudson Hall LLC*, No. 22-CV-9737, 2023 WL 5353402, at *2 (S.D.N.Y. Aug. 21, 2023) (finding that "allegations of a 'common policy and practice of requiring off-the-clock work' and 'a system of editing [the p]laintiff's . . . time sheets'" were too "vague and generic" to plausibly allege a willful violation of the FLSA, particularly in view of the fact that the plaintiff "[did] not describe the purported 'common policy and practice' or time editing 'system' in any detail" (citation omitted)).

In connection with arguing that the allegations in the Amended Complaint support an inference of willfulness on the part of the Club, Lewis and Williams rely on *Maria v. El Mambi Rest. Corp.*, No. 20-CV-3707, 2021 WL 2337577, at *4 (S.D.N.Y. June 8, 2021).  (*See* Pls' Opp'n 10–11.)  But, in light of *Whiteside*—which *Maria* does not address—the Court finds their reliance on that case to be unpersuasive.  To be sure, the plaintiff in *Maria* alleged that the defendants "engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA" and "willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA . . . by

failing to maintain accurate and complete timesheets and payroll records." 2021 WL 2337577, at *4.[7] However, in terms of analysis, the court simply concluded, without any citation to authority, that those "general allegations suffice[d] to adequately plead willfulness." *Id.* And *Whiteside* makes clear that "a plaintiff must allege *facts*"—not just conclusions—"that permit a plausible inference that the defendant willfully violated the FLSA for [the three-year statute of limitations] to apply." *Whiteside*, 995 F.3d at 323 (emphasis added). This Court will, as it must, follow the guidance in binding Second Circuit precedent. *See id.* at 320 (identifying a district court decision, which held that "the 'general averment of willfulness suffice[d]' for the three-year [statute of limitations] to apply," as among the decisions that failed to apply the appropriate pleading standard requiring allegations of facts that render plausible the conclusion that a defendant acted willfully (quoting *Henry v. Nannys for Grannys Inc.*, 86 F. Supp. 3d 155, 161 (E.D.N.Y. 2015))).[8]

The Court is likewise unconvinced by the other cases Lewis and Williams point to in their Opposition—namely, *Mota v. Abalon Exterminating Co., Inc.*, No. 22-CV-7602, 2023 WL 5211022 (S.D.N.Y. Aug. 14, 2023), and *Damassia v. Duane Reade, Inc.*, No. 04-CV-8819, 2005 WL 1214337 (S.D.N.Y. May 20, 2005)—because the plaintiffs in those cases *did* raise specific factual allegations that supported an inference of willfulness. (*See* Pls' Opp'n 10–11, 13.) In *Mota*, for example, the plaintiffs alleged that "when they worked above forty hours in a given

---

[7] The Court notes that certain of the allegations added to the Amended Complaint that Lewis and Williams rely upon to plead willfulness *very* closely mirror, if not parrot, the allegations held to be sufficient in *Maria*. (*See* AC ¶¶ 82–84.) The Court trusts that—in signing a pleading containing these allegations and filing it with this Court—Plaintiffs' counsel has been mindful of his obligations under Federal Rule of Civil Procedure 11(b).

[8] To be clear, in declining to follow the cursory analysis in *Maria*, the Court in no way suggests that cases pre-dating, or otherwise not explicitly discussing, *Whiteside* are no longer good law. (*See* Pls' Opp'n 13.)

workweek, [the d]efendants *would divide their hours into separate paychecks so that their check never reflected their accurate hours*, in an attempt to avoid paying overtime."  2023 WL 5211022, at *3 (quotation marks omitted) (emphasis added).  Far from a mere conclusion, that allegation asserts a specific fact that strongly suggested the defendants were seeking to evade their obligations under the FLSA.  Similarly, in *Damassia*, the defendant-drugstore was alleged to have "schemed to underpay night-time stock clerks" by giving them the title "assistant night *manager*" in order to "create the impression that these stock clerks [were] executives exempt from overtime pay requirements under state and federal law."  2005 WL 1214337, at *1 (citation omitted).  Again, given that particular factual context, it was more than plausible that that defendant misleadingly titled its employees with, at minimum, reckless disregard for their overtime payment obligations under the FLSA.  *See id.* at *1–2.[9]

---

[9] Lewis and Williams rely on *Damassia* to bolster their contention that willfulness can be inferred from their allegation that the Club "knowingly misclassified its [caddies] as independent contractors when they should have been classified as its employees."  (AC ¶ 84; *see also* Pls' Opp'n 11.)  However, the facts alleged in the Amended Complaint are not entirely inconsistent with the conclusion that the caddies were independent contractors.  Although the Court need not decide—and is not deciding—whether the Club's caddies are either independent contractors or employees under the FLSA, it notes that courts consider several factors when making that determination, including "the degree of skill and independent initiative required to perform the work" at issue.  *See Su v. Pamper Our Parents, Inc.*, No. 23-MC-3225, 2024 WL 328807, at *4 (E.D.N.Y. Jan. 29, 2024) (quoting *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 350 (E.D.N.Y. 2015)); *see also Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059–60 (2d Cir. 1988) (same).  And the Amended Complaint, at the very least, suggests that caddies at the Club work somewhat independently—i.e., away from other workers at the Club, such as the Caddie Master—while doing loops, and that they exercise a certain degree of skill insofar as they provide golfing suggestions or information on the course to golfers with whom they are working.  (*See, e.g.*, AC ¶¶ 34, 42–43.)  Indeed, the Wage and Hour Division of the Department of Labor itself has stated that it "is not prepared to assert that caddies are employees of [] golf course operator[s,]" at least where the caddies "are engaged to serve the needs of particular players for substantial periods of time and their services are [] directed by and are of most immediate benefit to the players themselves" and "the players[] . . . are expected to pay for the [caddies'] services."  U.S. Dep't. of Labor, Wage and Hour Div., Field Operations Handbook § 10b15 (2016).  In the Court's view, then, merely classifying caddies as independent contractors does not raise the plausible inference that the Club was willfully violating the FLSA.

Finally, Lewis and Williams rely somewhat heavily on language in certain cases stating that "courts considering the question [of willfulness] on a motion to dismiss tend to favor findings of willfulness."  (Pls' Opp'n 9 (quoting *Montoya*, 2024 WL 874640, at *5); *see also id.* at 10.)  To be sure, courts have included language to that effect in many decisions.  *See, e.g.*, *Vann v. Persico*, No. 20-CV-628, 2022 WL 4368110, at *10 (S.D.N.Y. Sept. 20, 2022); *Maria*, 2021 WL 2337577, at *4; *Joya v. Tutto Fresca Italian Food LLC*, No. 18-CV-1299, 2019 WL 3282941, at *2 (E.D.N.Y. July 22, 2019).  In support of that proposition, those courts are ultimately quoting *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 191 (E.D.N.Y. 2015).  But among the cases *Chime* relies upon is *Goodman v. Port Authority of New York and New Jersey*, in which the court just stated—without citing any authority—that "[w]hether or not a violation of the FLSA is 'willful' is a fact-intensive inquiry not appropriately resolved on a motion to dismiss."  850 F. Supp. 2d 363, 381 (S.D.N.Y. 2012).  Beyond that, *Chime* cites to decisions from a line of cases determining that "where willfulness is in dispute, a three-year statute of limitations applies *at the conditional certification stage*."  *Chime*, 137 F. Supp. 3d at 191–92 (emphasis added) (quoting *Alvarez v. IBM Rests. Inc.*, 839 F. Supp. 2d 580, 587–88 (E.D.N.Y. 2012)); *see also McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 396, 399 (E.D.N.Y. 2011) ("Where willfulness is disputed, the court applies the three-year statute of limitations *for purposes of certifying a representative action*." (emphasis added) (quoting *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007)).  It is also notable that in the first decision in that line of cases—*Roebuck v. Hudson Valley Farms, Inc.*— that court merely stated, again without citing any authority, that it "*agree[d] with [the] plaintiffs* that the issue of willfulness cannot be determined at [the conditional certification] stage and that therefore the [c]ourt should direct that the [opt-in] notice be distributed to all [relevant] workers

employed during the [applicable] three-year period."  239 F. Supp. 2d 234, 240 (N.D.N.Y. 2002)

(emphasis added).  In short, Plaintiffs' reliance on this proposition of questionable provenance is

tenuous at best.  Further, even if that proposition—which stems from persuasive authority *at*

*best*—holds true, it must be tempered by binding precedent requiring that plaintiffs "allege *facts*

*that permit a plausible inference* that the defendant willfully violated the FLSA for [the three-

year statute of limitations] to apply."  *Whiteside*, 995 F.3d at 323 (emphases added).

      As the Second Circuit explained, Congress "adopted a two-tiered statute of limitations"

in the FLSA—a two-year default period and a three-year period for willful violations.  *Whiteside*,

996 F.3d at 322 (citation omitted).  In doing so, "Congress intended to draw a *significant*

*distinction* between ordinary violations and willful violations" of the FLSA, and to gain the

benefit of the longer limitations period, a plaintiff is required to plausibly plead "that the

employer knew or showed reckless disregard for the matter of whether its conduct was

prohibited by the [FLSA]."  *Id.* (emphasis in original) (quoting *McLaughlin*, 486 U.S. at

132–33).  By relying on mere magic words and conclusions to defeat the instant Motion, Lewis

and Williams have failed to meet that burden and plead facts giving rise to the plausible

inference that the Club knew about or showed reckless disregard as to its alleged FLSA

violations.  They are, therefore, subject to the default two-year statute limitations under the

FLSA.  *See* 29 U.S.C. § 255(a).  And given that the initial Complaint was filed more than two

years after the end of their time working at the Club, (*see* Compl.; AC ¶¶ 18, 85, 100), Lewis and

Williams's FLSA claims must be dismissed as time-barred.[10]

---

[10] Having concluded that Lewis and Williams's FLSA claims are time-barred, the Court
need not reach Defendant's remaining arguments on the merits of those claims.  (*See* Def's
Mem. 18–29.)

2.  Supplemental Jurisdiction

In light of the Court's dismissal of Lewis and Williams's federal FLSA claims, the Court

agrees with Defendant that it should decline to exercise supplemental jurisdiction over Plaintiffs'

NYLL claims, which, of course, arise under state law.  (Def's Mem. 29–30.)  Where a district

court "has dismissed all claims over which it has original jurisdiction," it "may decline to

exercise supplemental jurisdiction" over any remaining claims.  *See* 28 U.S.C. § 1367(c)(3).

"Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional

values of judicial economy, convenience, fairness, and comity, in deciding whether to exercise

jurisdiction."  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citation and

quotation marks omitted); *see also Gibson v. Mount Vernon Montefiore Hosp. Exec. Dir.*,

No. 22-CV-4213, 2024 WL 1217528, at *13 (S.D.N.Y. Mar. 19, 2024).  "[I]n the usual case in

which all federal-law claims are eliminated before trial, the balance of factors to be considered

. . . will point toward declining to exercise jurisdiction over the remaining state-law claims."

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Marcus v. AT&T Corp.*,

138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial,

the state claims should be dismissed as well."); *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir.

1994) ("It is axiomatic that when all federal claims are eliminated prior to trial, a court should

decline to exercise jurisdiction over any remaining pendent state claims." (quotation marks

omitted)); *Erie Grp. LLC v. Guayaba Cap., LLC*, 110 F. Supp. 3d 501, 511 n.68 (S.D.N.Y. 2015)

(same).

The Court finds nothing that distinguishes this Action from "the usual case."  *See Cohill*,

484 U.S. at 350 n.7.  Lewis and Williams's FLSA claims have both been dismissed, *see Dellutri*

*v. Village of Elmsford*, 895 F. Supp. 2d 555, 575 (S.D.N.Y. 2012) (declining to exercise

supplemental jurisdiction where "th[e] case remains in its initial stages, and the [p]arties have not yet proceeded to discovery"); *Middleton v. United States*, No. 10-CV-6057, 2012 WL 394559, at *1 (E.D.N.Y. Feb. 7, 2012) (declining to exercise supplemental jurisdiction because no federal claims survived a motion to dismiss), and none of the factors that the Supreme Court enunciated in *Cohill*—"judicial economy, convenience, fairness, [or] comity"—counsels against such dismissal, 484 U.S. at 350 n.7.  Thus, Plaintiffs' NYLL claims against the Club are dismissed without prejudice.  *See Polanco*, 2024 WL 3553456, at *3 (declining to exercise supplemental jurisdiction over the plaintiff's NYLL claims after dismissing his FLSA claim); *Fisher*, 2023 WL 5353402, at *3 (same).

### III.  Conclusion

For the foregoing reasons, the Court grants Defendant's Motion.  Although Plaintiffs have already had an opportunity to amend their pleadings to address the statute-of-limitations issue, (*see* Dkt. Nos. 9, 11–12), the Court's dismissal of the Amended Complaint is without prejudice because this is the first adjudication of Plaintiffs' claims on the merits.  If Plaintiffs wish to file a second amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiffs must do so within thirty days of the date of this Opinion & Order.  *See Tyson v. Town of Ramapo*, No. 17-CV-4990, 2019 WL 1331913, at *19 (S.D.N.Y. Mar. 25, 2019) ("The Court will afford Plaintiff an opportunity to amend if, after reviewing this Order and Opinion and the law therein, he still believes that he can plausibly state claims against Defendants." (alteration adopted) (citation omitted)).  There will be no extensions.  Plaintiffs are further advised that a second amended complaint will completely replace, not supplement, the now-dismissed Amended Complaint.  Any second amended complaint must therefore contain *all* of the claims, defendants, and factual allegations that Plaintiffs wishes the Court to consider.  If

Plaintiffs fails to timely file a second amended complaint, the dismissed claims may be dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion.  (*See* Dkt. No. 22.)

SO ORDERED.

Dated:    September 24, 2024
           White Plains, New York

_____
KENNETH M. KARAS
United States District Judge