UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KAMEIKA LEWIS, *et al.*, *individually and on behalf of all other persons similarly situated*,

                      Plaintiff,

    v.

PELHAM COUNTRY CLUB,

                      Defendant.

No. 23-CV-6500 (KMK)

OPINION & ORDER

---

Appearances:

Douglas B. Lipsky, Esq.
Lipsky Lowe LLP
New York, NY
*Counsel for Plaintiffs*

Christopher B. Harwood, Esq.
Morvillo Abramowitz Grand Iason & Anello PC
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Plaintiffs Kameika Lewis ("Lewis"), Ann Pearlina Brown ("A. Brown"), Adrian Williams ("Williams"), and Myana Brown ("M. Brown," and collectively "Plaintiffs"), individually and on behalf of all others similarly situated, bring this putative Collective and Class Action against Pelham Country Club ("Defendant" or the "Club"), pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), and the New York Labor Law, § 190 et seq. ("NYLL"). (*See* Second Am. Compl. ("SAC") ¶¶ 164–209 (Dkt. No. 32).)[1] Among other

---

[1] Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper-right corner of each page in cites from the record.

things, the Second Amended Complaint ("SAC") alleges that Defendant failed to pay minimum and overtime wages to Plaintiffs, who worked at the Club as golf caddies. (*See generally id.*) Before the Court is Defendant's Motion To Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (*See* Not. of Mot. (Dkt. No. 38).) For the reasons that follow, Defendant's Motion is denied.

## I. Background

### A. Factual Background

The Court assumes the Parties' familiarity with the factual and procedural history in this case, as described in *Lewis v. Pelham Country Club ("Lewis I")*, No. 23-CV-6500, 2024 WL 4275588 (S.D.N.Y. Sept. 24, 2024). The Court only repeats those facts necessary for consideration of the instant Motion. Unless otherwise stated, the following facts are drawn from the SAC. The facts alleged therein are assumed true for the purpose of resolving the instant Motion. *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023).

#### 1. The Parties

Defendant is a private golf club in Pelham Manor, New York. (*See* SAC ¶¶ 1, 16.) The Club's approximately 250 members must pay a one-time initiation fee, as well as annual dues. (*See id.* ¶¶ 17–18.)

Plaintiffs each worked at the Club as golf caddies. (*See id.* ¶ 2.) Depending on the weather, they would work from May to October each year. (*See id.* ¶ 19.) Lewis worked as a caddie at the Club for each golf season between 2015 and 2020. (*See id.* ¶ 98.) Williams held that position for each golf season between 2018 and 2020. (*See id.* ¶ 113.) Both A. Brown and M. Brown worked as caddies at the Club for each golf season between 2015 and 2019. (*See id.*

¶¶ 127, 141.) Plaintiffs did not work as caddies anywhere else during their respective tenures at the Club. (*See id.* ¶¶ 99, 114, 128, 142.)

### 2. Caddies' Responsibilities at the Club

Defendant employs about thirty caddies at any one time, and those caddies often work exclusively at the Club for multiple years. (*See id.* ¶¶ 20, 26.) Most of the golfers at the Club use its caddies. (*See id.* ¶ 24.) In terms of attire, the Club's caddies are required to wear a blue shirt, khaki pants, and a Club-provided bib with the Club's insignia. (*See id.* ¶ 21.)

When caddies start working at the Club, they receive training from other Club caddies. (*See id.* ¶ 36.) The caddies' duties include carrying the golf bag for one or two golfers (which is referred to as doing a "loop"); finding, identifying and retrieving golfers' golf balls; cleaning the golfers' clubs and golf balls; correcting divots on the golf course; raking sand traps after use; removing the flag from the hole on the putting green; and providing the golfers with suggestions on what club to use and information on the course when asked. (*See id.* ¶¶ 37–38.) At the Club, a round of golf usually lasts around four to four and a half hours. (*See id.* ¶ 46.) In a given day, caddies work one or two rounds. (*See id.* ¶ 47.)

In addition to its caddies, Defendant also employed a Caddie Master whose responsibilities include: pairing caddies with golfers; supervising caddies; interviewing, hiring, and firing caddies; scheduling caddies' hours and deciding the number of rounds they work on a given day; disciplining caddies; and discussing any member complaints about caddies with them. (*See id.* ¶¶ 29–34, 40, 48–52.)

### 3. Caddies' Work Schedules

In general, caddies arriving at the Club for work are required to check in with the Caddie Master by signing a sign-in book, so that the Caddie Master knows the caddies are available to

3

be assigned to a golfer. (*See id.* ¶ 40.) Typically, caddies arrive for work by around 6:30 a.m., (*see id.* ¶ 41), and depending on when the sun goes down, caddies generally stop working between 4:00 and 6:00 p.m., (*see id.* ¶ 42). Most of the Club's caddies work six days per week—from Tuesday to Sunday—though some caddies also work on Mondays if there is an "outing" scheduled.[2] (*See id.* ¶ 43.) As alleged, caddies therefore tend to work between 40 and 54 hours a week. (*See id.* ¶ 45.)

With respect to Plaintiffs themselves, both Lewis and Williams worked 66 hours per week at the Club during the years they worked there. (*See id.* ¶¶ 103, 117.) For their part, A. Brown and M. Brown worked 57 hours per week during their respective tenures at the Club. (*See id.* ¶¶ 131, 145.)

   4. Bag Fees

Plaintiffs aver that the Club does not pay its caddies any compensation at all. (*See id.* ¶¶ 53, 104, 118, 131, 146; *see also id.* ¶¶ 54–55 ("[The Club] does not pay its [caddies] any hourly rate, any salary, any piece rate[,] or any other form of compensation[,]" including any "overtime premium.").) Instead, caddies like Plaintiffs receive payment from golfers directly in the form of so-called "Bag Fees." (*See id.* ¶¶ 56, 58, 105, 119, 132, 147.)

More specifically, golfers pay caddies a $60 fee, as determined by the Club, for each golf bag that they carry during a round.[3] (*See id.* ¶¶ 58–59.) Caddies are not able to change the Bag Fee or negotiate a higher Bag Fee, though they do get to keep the entire Fee they are paid. (*See*

---

[2] An example of an outing would be a situation where a company rents the Club's golf course to use for a day. (*See* SAC ¶ 43.)

[3] Plaintiffs assert that caddies are usually assigned two golfers per loop. (*See* SAC ¶ 57.)

*id.* ¶¶ 58–61.) Further, caddies are under no obligation to share any of the Bag Fees they receive with the Club. (*See id.* ¶ 63.)

In addition to Bag Fees, golfers may—at their discretion—tip their caddies. (*See id.* ¶ 64.) However, golfers do not always tip caddies in addition to paying the Bag Fee. (*See id.* ¶ 64.) The Bag Fees and any additional tips constitute the sole compensation for caddies at the Club. (*See id.* ¶ 66.)

Plaintiffs allege that no agreement existed between the Club and its caddies that the bag fees or any additional tips from golfers would count towards the Club's wage payment obligations. (*See id.* ¶ 74.) In addition, as alleged, the Club did not: keep records of or otherwise track the Bag Fees paid to caddies; invoice golfers for the Bag Fees they paid; collect and distribute the Bag Fees to its caddies on golfers' behalf; take steps to ensure that golfers paid Bag Fees to golfers; or include caddies' bag fees in its gross receipts. (*See id.* ¶¶ 75–78, 81–83.)

The Club does not pay caddies any compensation for the time they spend waiting for the Caddy Master to assign them a golfer. (*See id.* ¶ 67.) Lewis heard "numerous caddies complain to the Caddy Master about the Club not paying caddies anything when they were at the Club all day and did not go out on a loop." (*Id.* ¶ 89.) In response to these protests, the Caddy Master would routinely threaten not to assign the complaining caddie to a golfer. (*See id.*) Orlando, who was a caddie with the Club from 2014 to 2023, "regularly complained to the Caddy Master about not getting paid anything when he was at the Club all day but was not assigned a loop." (*Id.* ¶ 90.) However, the Club did not change its policies in response to such complaints. (*Id.* ¶ 91.)

B. <u>Procedural Background</u>

Plaintiffs initiated this Action on July 27, 2023. (*See* Compl. (Dkt. No. 1).) On September 24, 2024, the Court issued an Opinion granting Defendant's Motion to Dismiss (the "2024 Opinion"), and granting Plaintiffs leave to file a second amended complaint. (*See* Opinion and Order ("2024 Op.") (Dkt. No. 31).) On October 22, 2024, Plaintiffs filed the SAC. (*See* SAC.)

On November 5, 2024, Defendant submitted a pre-motion letter seeking leave to file the instant Motion. (*See* Letter from Christopher B. Harwood, Esq. to Court (Nov. 5, 2024) (Dkt. No. 33).) On November 12, 2024, Plaintiffs responded. (*See* Letter from Douglas B. Lipsky, Esq. to Court (Nov. 12, 2024) (Dkt. No. 34).) Pursuant to a briefing schedule set by the Court, Defendant filed the instant Motion on February 7, 2025. (*See* Not. of Mot.; Decl. of Christopher B. Harwood in Supp. of Mot. ("Harwood Decl.") (Dkt. No. 39); Def. Mem. of Law in Supp. Mot. ("Def Mem.") (Dkt. No. 40).) On March 7, 2024, Plaintiffs filed their Opposition. (*See* Pls. Opp. to Def. Mot. ("Pls. Opp.") (Dkt. No. 41); Decl. of Douglas B. Lipsky in Opp. to Mot. ("Lipsky Decl.") (Dkt. No. 42).) On March 26, 2025, Defendant filed its Reply. (*See* Def. Rep. in Supp. Mot. to Dismiss ("Def. Rep.") (Dkt. No. 43).)

## II.    Discussion

A. <u>Standard of Review</u>

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a plaintiff's claim based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion to dismiss stage, a court must "'draw all reasonable inferences in the plaintiff's favor, 'assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.'" *United States v. Medtronic, Inc.*,

No. 18-CV-1628, 2024 WL 4165522, at *3 (S.D.N.Y. Sept. 12, 2024) (quoting *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011)).

To survive a motion to dismiss, the Supreme Court has held that a complaint "does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570. Certainly, if a plaintiff has not "nudged [his] claim[ ] across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

B. Analysis

In its Motion, Defendant argues that Plaintiffs' claims should be dismissed because: (1) they are untimely, as Plaintiffs cannot establish that any FLSA violations were "willful," (*see* Def. Mem. 13–30), and (2) the Court should also decline to exercise supplemental jurisdiction over the remaining state law claims, (*see id*. 30–32.)  Plaintiffs argue that the new allegations found in the SAC provide sufficient circumstantial evidence of willfulness to survive the Motion. (*See generally* Pl. Opp.)

1. Timeliness Under the FLSA

"Generally, 'the lapse of a limitations period is an affirmative defense that a defendant must plead and prove.'" *Sanchez v. L'Oreal USA, Inc.*, No. 21-CV-3229, 2022 WL 1556402, at *4 (S.D.N.Y. May 17, 2022) (alterations adopted) (quoting *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008) (citing Fed. R. Civ. P. 8(c)(1))).  "Nevertheless, a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Id.* (internal quotation marks omitted).  "A court may dismiss a claim on statute-of-limitations grounds at the pleading stage if the complaint clearly shows the claim is out of time." *Id.* (alterations adopted) (quoting *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021)).

As noted in the 2024 Opinion, "[t]he FLSA statute of limitations is two years for non-willful violations and three years for willful violations." *Lewis I*, 2024 WL 4275588, at *9 (S.D.N.Y. Sept. 24, 2024) (quoting *Tung v. Banzai Steakhouse Inc.*, No. 22-CV-5750, 2023 WL 5827643, at *6 (S.D.N.Y. Sept. 8, 2023)).  Here, Plaintiffs filed the instant Action on July 27, 2023.  (*See generally* Compl.)  Thus, under the typical two-year statute of limitations, any alleged FLSA violation must have occurred no earlier than July 27, 2021, and under the three-

8

year statute of limitations for "willful" violations of the FLSA, any alleged violations must have occurred no earlier than July 27, 2020. However, neither Lewis nor Williams is alleged to have been employed by the Club after 2020.[4] (*See* SAC ¶¶ 98, 113, 127, 141.) Thus, to establish that their claims are timely, Plaintiffs must show that the alleged FLSA violations against Lewis and Williams were "willful."

With respect to willfulness, the Second Circuit has explained that "[a]n employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by [that statute]." *Whiteside*, 995 F.3d at 324 (quotation marks omitted) (quoting *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009)); *see also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (same). "Therefore, a plaintiff must show more than that defendant should have known it was violating the law. [']Should have known['] implies negligence or reasonable person standard. [']Reckless disregard['], in contrast, involves actual knowledge of a legal requirement and deliberate disregard of the risk that one is in violation." *Agureyev v. H.K. Second Ave. Rest. Inc.*, No. 17-CV-7336, 2018 WL 4356731, at *2 (S.D.N.Y. Sept. 12, 2018) (quotation marks omitted); *see also Whiteside*, 995 F.3d at 324 ("Mere negligence is insufficient [to demonstrate willfulness]." (quoting *Young*, 586 F.3d at 207)); *Montoya v. Havana Cent. NY 2, LLC*, No. 23-CV-111, 2024 WL 874640, at *5 (S.D.N.Y. Jan. 8, 2024) (noting that "[r]eckless disregard, in this context, 'involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation.'") (quoting *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 937–38 (S.D.N.Y. 2013)), *report and recommendation adopted*, 2024 WL 871206 (S.D.N.Y. Feb. 29,

---

[4] Only Lewis and Williams have raised FLSA claims in this case. (*See* SAC ¶¶ 193, 202.) Thus, they, rather than all Plaintiffs, will be the focus of the analysis in this Section.

2024). Put another way, "if an employer acts unreasonably, but not recklessly, in determining its legal obligation [under the FLSA], its action should not be considered willful." *Whiteside*, 995 F.3d at 324 (quoting *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 39 (2d Cir. 1995)). "The burden is on the employee to show willfulness." *Pappas v. City of New York*, No. 23-CV-6010, 2024 WL 2093472, at *13 (S.D.N.Y. May 9, 2024) (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999)).

In the 2024 Opinion, the Court rejected Plaintiffs' allegations of willfulness as too conclusory to demonstrate that the three-year statute of limitations applied. Relying on *Whiteside* as "instructive," the Court concluded that Plaintiffs' allegations did not "plausibly" suggest that Defendant knew or recklessly disregarded its obligations under the FLSA. *See Lewis I*, 2024 WL 4275588, at *5. In particular, the Court held that allegations that Defendant "was aware of [the FLSA's] requirement to pay its caddies minimum wage and overtime premium pay," "structured its unlawful caddie compensation policy with the clear intent of minimizing its labor costs," "knowingly misclassified its caddies as independent contractors . . . with the intent of covering up its statutory violations and minimizing its labor costs," and failed to keep records of "when its caddies start and stop working on each day," were insufficient to *plausibly* allege willfulness. *See id.*, at *5–9.

In the SAC, Plaintiffs amend their allegations to include two new categories of facts, which they argue go to willfulness. (*See* Pl. Opp. 6.) First, Plaintiffs allege that "[h]aving operated since 1921, the Club is aware of its FLSA requirements to pay its employees the minimum wage and overtime, including when they are waiting around for work." (*Id.* (citing SAC ¶¶ 84–85).) Second, Plaintiffs allege that the Club received a series of complaints from caddies about not getting paid anything during the time that they were required to be at the Club,

10

but not assigned to a loop. (*See id*. ¶¶ 89–90.) Where caddies complained about this policy, the Caddy Master threatened not to pair the caddies with a golfer if they failed. (*See id*. ¶ 89.)

As to the allegations that that Defendant has been in operation since 1921 and has managed a number of employees over that time, the Court concludes that they fail to plausibly allege a willful violation of the FLSA. These allegations amount to nothing more than evidence that the Club "knew that the FLSA was in the picture," which the Supreme Court has made clear is insufficient to demonstrate willfulness. *McLaughlin*, 486 U.S. at 132–133 (concluding that under such a standard "the normal [two-]year statute of limitations would seem to apply only to ignorant employers, surely not a state of affairs intended by Congress"); *Rosario v. Mis Hijos Deli Corp.*, No. 15-CV-6049, 2018 WL 4636822, at *7 (S.D.N.Y. Sept. 27, 2018) ("A defendant's extensive experience in an industry does not, alone, support an inference that she was aware of the FLSA's requirements."); *Eschmann v. White Plains Crane Serv., Inc.*, No. 11-CV-5881, 2014 WL 1224247, at *6 (E.D.N.Y. Mar. 24, 2014) (rejecting an inference that the defendants' violation of the FLSA was "willful" based on the defendant's experience in business).

Moreover, Plaintiffs' allegation that Defendant "knowingly disregarded the FLSA and [the NYLL's] requirements to pay its golf caddies the minimum wage and overtime because, in part, it believed its caddies would not take any legal action about not getting paid the minimum wage or overtime since the caddies would not want to risk being blacklisted at this or any other club by complaining" is merely an allegation that Defendant *knew* it was violating the FLSA, and therefore is "'no more than a conclusion,' which is 'not entitled to the assumption of truth,' even at the motion-to-dismiss stage." *Lewis I*, 2024 WL 4275588, at *6 (alterations adopted) (quoting *Iqbal*, 556 U.S. at 679); *see id*. (noting that "conclusory" is defined as "expressing a factual

11

inference without stating the underlying facts on which the inference is based" and holding that "that is precisely what [Plaintiffs] have done here; they have expressed the inference that the Club was aware of its purported minimum and overtime wage obligations while providing *no* facts rendering that conclusion feasible, much less plausible" (alterations adopted)); *see also Sanchez*, 2022 WL 1556402, at *5 (concluding that the plaintiff had failed to adequately allege willfulness where "[t]he [a]mended [c]omplaint include[d] only conclusory assertions that [the d]efendant . . . was aware of its overtime obligations and had a policy or practice of failing to meet them, without describing what that policy or practice [was]").

However, as to the second group of Plaintiffs' allegations—that several caddies complained about the Club's practices—the Court concludes that Plaintiffs have plausibly, though barely, pled sufficient facts to establish willfulness. Courts in the Second Circuit have held that complaints from employees can put employers on notice that they are in violation of the FLSA. *See Mackenzie v. Waypointe Partners Mgmt. LLC*, No. 22-CV-7951, 2025 WL 388296, at *5 (S.D.N.Y. Feb. 4, 2025) ("Prior complaints to an employer regarding an [FLSA] violation are sufficient to put the employer on notice about its obligations under the FLSA and thus establish willfulness." (quoting *Brain v. Execu-Search Grp.*, LLC, No. 22-CV-8219, 2024 WL 838085, at *4 (S.D.N.Y. Feb. 28, 2024)); *Markovic v. Milos Hy, Inc.*, No. 22-CV-1412, 2023 WL 4763807, at *7 (S.D.N.Y. July 26, 2023) (concluding the plaintiffs "d[id] not just make conclusory allegations of willfulness" where they alleged that they complained about the underpayment of tips); *Malcolm v. City of New York ("Malcolm II")*, No. 20-CV-9641, 2023 WL 4298869, at *3 (S.D.N.Y. June 30, 2023) (concluding that the plaintiff had plausibly alleged willfulness where plaintiff submitted numerous complaints regarding his unpaid overtime). Here, Plaintiffs allege that caddies made repeated complaints about being required to

12

be in the Club without being paid. (*See* SAC ¶¶ 89–90.) Defendants argue that such complaints are insufficient because they fail to put the defendant on notice "that the challenged conduct might violate the FLSA" and of "the specific FLSA violation that might be occurring." (*See* Def Mem. 25.) Plaintiffs, on the other hand, argue that the complaints that they allege were sufficiently specific to put Defendant on notice that its challenged conduct was unlawful. (*See* Pl. Opp. 13.) Per Plaintiffs, employee complaints regarding Defendant's policy of requiring caddies to be at the Club, unpaid, until they were paired with a golfer, should have put Defendant on notice that it was violating minimum wage laws. (*See id*. 13–14.) Plaintiffs also point to allegations that the Caddy Master reacted to these complaints by threatening to withhold payment opportunities as evidence that the Club was aware its policy violated the FLSA. (*See id*. 14.)

While these allegations are thin, Plaintiffs' burden at this stage is merely to allege sufficient facts that render willfulness *plausible*. See *Mackenzie*, 2025 WL 388296, at *5 ("[A] plaintiff must allege facts at the pleading stage that give rise to a *plausible* inference that a defendant willfully violated the FLSA for the three-year exception to apply." (emphasis added) (internal quotation marks omitted) (quoting *Whiteside v. Hover-Davis, Inc*., 995 F.3d 315 (2d Cir. 2021)). As Plaintiffs point out, the allegations here are consistent with those in other cases where courts have found willfulness sufficiently alleged. *See, e.g., Mackenzie*, 2025 WL 388296, at *5 (concluding that the plaintiff's alleged complaints about compensation were sufficient to "give rise to a plausible inference of willfulness"); *Abe v. Yamaguchi & Friends, Inc*., No. 22-CV-3164, 2024 WL 3875779, at *6 (E.D.N.Y. Aug. 20, 2024) (concluding that there was evidence of willfulness where employees complained that they had not received tips, which prompted the employer to "refuse[] to speak with [the employees]"); *Markovic*, 2023 WL

4763807, at *7 (S.D.N.Y. July 26, 2023) (concluding that willfulness was established where the plaintiffs complained to their managers about tip underpayment, and managers "threatened to 'fire everyone and start over'").

The cases that Defendant raises are not to the contrary. In *Eschmann v. White Plains Crane Serv., Inc.*, No. 11-CV-5881, 2014 WL 1224247, (E.D.N.Y. Mar. 24, 2014), for example, the court concluded that material disputes of fact precluded granting summary judgment even where the plaintiff testified that he had complained about the practice in issue. *See id*. at *6. But in *Eschmann* it was the *plaintiff* who moved for summary judgment as to the question of willfulness. *See id*. at *7. Accordingly, the court in *Eschmann* simply concluded that it could not find, as a matter of law, that defendants acted willfully. As noted previously, Plaintiffs burden here is merely to allege that it is *plausible* that Defendant acted willfully. *Eschmann* does not compel a different result. *Parada v. Banco Indus. de Venezuela, C.A.*, No. 10-CV-883, 2012 WL 13376419 (S.D.N.Y. July 20, 2012) is also distinguishable. There, the plaintiff argued that the fact that the defendant had rejected her single application for overtime pay was sufficient to create a triable issue of fact as to willfulness. *See id.* at *4 (noting that "[the plaintiff] once requested overtime pay" was not enough, without more, to raise triable issues of fact as to willfulness). The court in *Parada* concluded that this fact, without any evidence that the plaintiff complained about the rejection of her request or otherwise complained about the failure to pay her overtime, was insufficient to create a jury question as to willfulness. *See id.* Here, Plaintiffs allege that employees *repeatedly* complained about the fact that they were required to be on the premises without pay, and in response, the Caddy Master "would threaten not pair them with a

14

golfer if they continue[d] to complain."[5] (*See* SAC ¶¶ 89–90.) Both the allegation that there were repeated complaints, and that those complaints were met with hostility, is sufficient to distinguish the evidence alleged here from the facts adduced in *Parada*.

* * *

For the foregoing reasons, the Court concludes that Plaintiffs have plausibly alleged that Defendant acted willfully, and therefore that the three-year statute of limitations applies to the FLSA allegations. Defendant's Motion is denied.

   2. State Law Claims

In its Motion, Defendant argues that because Plaintiffs' federal law claims fail, the Court should decline to exercise jurisdiction over Plaintiffs' state law claims. (*See* Def. Mem. 30.) Because the Court rejects Defendant's Motion to Dismiss Plaintiffs' federal law claims, it retains jurisdiction over Plaintiffs' state law claims. *See JC Hosp. v. Hochberg*, 703 F. Supp. 3d 448, 468 (S.D.N.Y. 2023) ("Because [the plaintiffs] maintain a valid federal claim, the [c]ourt will retain this case, and exercise supplemental jurisdiction over [the plaintiffs'] state law claims."); *Hincapie v. City of New York*, 434 F. Supp. 3d 61, 74 n.7 (S.D.N.Y. 2020) ("Because the federal claims survive, the Court exercises supplemental jurisdiction over the state claims.").

---

[5] Defendant argues that the allegation that employees complained "frequently" is "unsupported and implausible," and therefore "not entitled to deference." (*See* Def. Mem. 27–28.) In support of this argument, Defendant points to the allegation in the SAC that caddies "typically caddy [one] or [two] rounds [i.e., loops] each day." (*See id.* at 27 (alterations adopted, emphasis omitted).) But this allegation is not inconsistent with the idea that there were days when caddies did not have a single loop but were nonetheless required to be at the Club, and that when such a situation came to pass, caddies "frequently" complained about not receiving compensation for their time at the Club. Therefore, the Court does not find the allegations in the complaint to be so at odds with one another as to warrant a departure from the ordinary rule all allegations in a plaintiff's complaint should be taken as true.

III. <u>Conclusion</u>

For the foregoing reasons, the Motion is denied. The Clerk of Court is respectfully directed to close the pending Motion (Dkt. No. 31). The Court will hold a status conference on October 28, 2025 at 11 AM.

SO ORDERED.

Dated: September 23, 2025
       White Plains, New York

                                          KENNETH M. KARAS
                                          United States District Judge