UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAMEIKA LEWIS, *individually and on behalf of all other persons similarly situated, et al.*,

Plaintiffs,

v.

PELHAM COUNTRY CLUB,

Defendant.

No. 23-CV-6500 (KMK)

OPINION & ORDER

Appearances:

Sara J. Isaacson, Esq.
Douglas B. Lipsky, Esq.
Lipsky Lowe LLP
New York, NY
*Counsel for Plaintiffs*

Christopher B. Harwood, Esq.
Morvillo Abramowitz Grand Iason & Anello PC
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Plaintiffs Kameika Lewis ("Lewis"), Ann Pearlina Brown ("A. Brown"), Adrian Williams ("Williams"), and Myana Brown ("M. Brown," and collectively, "Plaintiffs"), individually and on behalf of all other persons similarly situated, bring this putative Collective and Class Action against Pelham Country Club ("Defendant" or the "Club"), pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), and the New York Labor Law, § 190 et seq. ("NYLL"). (*See* Second Am. Compl. ("SAC") ¶¶ 164–209 (Dkt. No. 32).) Before the Court is Plaintiffs' Motion for Preliminary Approval of the Classwide Settlement Agreement and Release, Conditional Certification of the Settlement Class, Appointment of Plaintiffs'

Counsel as Class Counsel, Approval of the Proposed Notice of Settlement, and Scheduling of a Final Fairness Hearing. (*See generally* Not. of Pls.' Mot. for Prelim. Approval of Classwide Settlement Agreement & Release, Conditional Certification of Settlement Class, Appointment of Pls.' Counsel as Class Counsel, Approval of Proposed Not. of Settlement, and Scheduling of Final Fairness Hr'g ("Not. of Mot. for Prelim. Approval") (Dkt. No. 68).) For the following reasons, the Motion is denied without prejudice.

## I. Background

### A. Factual Background

The Court assumes the Parties' familiarity with the factual and procedural history in this case, as described in *Lewis v. Pelham Country Club ("Lewis I")*, No. 23-CV-6500, 2024 WL 4275588, at *1–3 (S.D.N.Y. Sep. 24, 2024), and *Lewis v. Pelham Country Club ("Lewis II")*, No. 23-CV-6500, 2025 WL 2711236, at *1–3 (S.D.N.Y. Sep. 23, 2025).

As alleged in the Second Amended Complaint, Defendant is a private golf club organized under New York law with its principal place of business in Pelham, New York. (*See* SAC ¶¶ 13, 16.) Plaintiffs were employed by Defendant as golf caddies. (*See id.* ¶ 2.) Defendant employs golf caddies seasonally, typically between May and October, with most caddies working six days per week, from Tuesday through Sunday, with some caddies working on Mondays when there are "outings" at the Club. (*See id.* ¶¶ 19, 43.) Defendant does not pay its golf caddies. (*See, e.g.*, *id.* ¶53.) Rather, a caddy is typically assigned to two golfers at a time, and golfers pay a "bag fee" directly to the caddy at a rate of $60 for each golf bag carried. (*See id.* ¶¶ 57–58.) Caddies have no control over this rate, which is set by the Club. (*See id.* ¶¶ 59–61.) Golfers sometimes, but do not always, tip caddies. (*See id.* ¶¶ 64–65.) These bag fees and tips are

caddies' sole compensation; caddies are not paid anything directly by Defendant, and Defendant does not pay caddies for time spent waiting to be assigned golfers. (*See id.* ¶¶ 53–54, 66–67.)

Plaintiff Lewis alleges that she was employed as a golf caddy by Defendant "for each golf season between 2015 and 2020," typically working from 7:00 a.m. to 6:00 p.m. daily, for approximately 66 hours per week. (*See id.* ¶¶ 98–103.) Plaintiff Williams alleges that he was employed as a golf caddy by Defendant "for each golf season between 2018 and 2020," typically working from 7:00 a.m. to 6:00 p.m. daily, for approximately 66 hours per week. (*See id.* ¶¶ 113–117.) Plaintiffs A. Brown and M. Brown allege that they were employed as golf caddies "for each golf season between 2015 and 2019," typically working from 6:30 a.m. to 4:00 p.m. daily, for approximately 57 hours per week. (*See id.* ¶¶ 127–131, 141–145.)

Plaintiffs each allege that Defendant failed to pay them the statutory minimum wage, overtime premium pay for hours worked beyond 40 hours per week, and spread-of-hours pay for days on which Plaintiffs worked more than 10 hours. (*See id.* ¶¶ 106–108, 120–122, 134–136, 148–150.) Plaintiffs further allege that Defendant failed to provide wage statements and notice as required by the New York Labor Law. (*See id.* ¶¶ 109–110, 123–124, 137–138, 151–152.) Plaintiffs bring their First through Fifth Causes of Action, arising under the NYLL, on their own behalf and on behalf of a Rule 23 class of "persons who work or have worked as Golf Caddies at Pelham Country Club at any time between July 27, 2017 and the entry of judgment in this case." (*See id.* ¶¶ 155, 164–192.) Plaintiffs bring their Sixth and Seventh Causes of Action, arising under the FLSA, on their own behalf and on behalf of an FLSA collective of "persons who work or have worked as Golf Caddies at Pelham Country Club at any time between July 27, 2020 and the entry of judgment in this case." (*See id.* ¶¶ 162, 193–209.)

B. Procedural Background

Plaintiffs initiated this Action on July 27, 2023, (*see* Class & Collective Action Compl. (Dkt. No. 1)), and amended on October 20, 2023, (*see* First Am. Class & Collective Action Compl. (Dkt. No. 13)). Defendant moved to dismiss on January 18, 2024, (*see* Not. of Def. Pelham Country Club's Mot. to Dismiss (Dkt. No. 22)), Plaintiffs filed their Opposition on February 27, 2024, (*see* Pls.' Mem. of Law in Opposing Def. Pelham Country Club's Mot. to Dismiss (Dkt. No. 28)), and Defendant replied on March 12, 2024, (*see* Reply Mem. of Law in Support of Def.'s Mot. to Dismiss (Dkt. No. 30)). On September 24, 2024, the Court dismissed Plaintiffs' First Amended Complaint with leave to amend. (*See* Op. & Order (Dkt. No. 31).) Plaintiffs filed their Second Amended Complaint on October 22, 2024. (*See* SAC.) Defendant moved to dismiss the Second Amended Complaint on February 7, 2025. (*See* Not. of Def. Pelham Country Club's Mot. to Dismiss Pls.' Second Am. Compl. (Dkt. No. 38).) Plaintiffs filed their Opposition on March 7, 2025, (*see* Pls.' Mem. of Law in Opposing Def. Pelham Country Club's Mot. to Dismiss Second Am. Compl. (Dkt. No. 41)), and Defendant replied on March 26, 2025, (*see* Reply Mem. of Law in Support of Def.'s Mot. to Dismiss (Dkt. No. 43)). On September 23, 2025, the Court denied Defendant's Motion to Dismiss. (*See* Op. & Order (Dkt. No. 44).) Defendant filed its Answer to Plaintiffs' Second Amended Complaint on October 23, 2025. (*See* Answer of Pelham Country Club (Dkt. No. 49).) Following letter correspondence regarding settlement negotiations, on June 10, 2026, Plaintiffs filed their Motion for Preliminary Approval of the Classwide Settlement Agreement and Release, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, Approval of the Proposed Notice of Settlement, and Scheduling of a Final Fairness Hearing. (*See* Not. of Mot. for Prelim. Approval.)

## II. Discussion

### A. Standard of Review

Under Federal Rule of Civil Procedure 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute." "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The Second Circuit has held the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Therefore, the Court must be satisfied the Parties' agreement is "fair and reasonable." *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015); *see also Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) (same).

In deciding the fairness of a settlement, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

Although the Court must consider the totality of circumstances, the most significant factors are:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotation marks omitted); *see also Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same). Certain other factors weigh against finding the proposed settlement fair and reasonable, which include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (quotation marks omitted); *see also Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same); *Garcia*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same). This decision "is thus an information intensive undertaking," *Camacho*, 2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to evaluate the bona fides of the dispute," *Gaspar v. Personal Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (citation and quotation marks omitted). To this end, courts require information regarding:

> the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award.

*Id.* (first alteration in original) (quotation marks omitted) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015)).

B. Analysis

At the outset, the Court notes that Plaintiffs request conditional certification of a class with two subclasses: "Rule 23 Class Members," consisting of "Named Plaintiffs and all individuals who worked as golf caddies at Pelham Country Club from July 27, 2017 to June 10, 2026," and "FLSA Class Members," consisting of "Named Plaintiffs and all individuals who worked as golf caddies at Pelham Country Club from July 27, 2020 to June 10, 2026." (Decl. of Douglas B. Lipsky ("Lipsky Decl.") Ex. B ("Settlement Agreement") § 1.5 (Dkt. No. 70-2); Mem. of Law in Support of Pls.' Mot. for Prelim. Approval of Classwide Settlement Agreement & Release, Conditional Certification of the Settlement Class, Appointment of Pls.' Counsel as Class Counsel, Approval of Proposed Not. of Settlement, & Scheduling of Final Fairness Hr'g ("Pls.' Mem.") 4 (Dkt. No. 69).) While Plaintiffs recognize that this is a "hybrid" case, (*see* Pls.' Mem. 17 (citing *Landin v. UBS Servs. USA, LLC*, No. 10-CV-711, 2012 WL 488284 (S.D.N.Y. Feb. 14, 2012))), they fail to request "conditional certification of the proposed FLSA Class as a collective action under Section 216 of the FLSA," separate from "certification of the proposed NYLL class under Rule 23 of the Federal Rules of Civil Procedure." *See Landin*, 2012 WL 488284, at *1.

Plaintiffs implicitly recognize the need for a certified FLSA collective in the context of the release provision in the proposed settlement: "Named Plaintiffs and all FLSA Class Members, who timely submit a Claim Form and thereby opt-in into the FLSA collective action, fully release and discharge Defendant and Releasees for all [FLSA] claims they have against

them . . . ." (Settlement Agreement § 4.1(B).)[1] Such is insufficient for compliance with the FLSA. "[T]he FLSA requires that any person choosing to be part of the collective (1) must consent in writing and (2) file his consent on the docket." *Olibares v. MK Cuisine Global LLC*, No. 21-CV-10694, 2023 WL 5702595, at *4 (S.D.N.Y. Sep. 5, 2023) (alteration and internal quotation marks omitted) (quoting *Villar v. AHRC Home Care Servs., Inc.*, No. 18-CV-9174, 2020 WL 4904031, at *3 (S.D.N.Y. Aug. 20, 2020)). Plaintiffs' proposed Claim Form, which members of either proposed subclass must submit to receive any payment, provides that "by signing, you are opting-into this case under the Fair Labor Standards Act." (Settlement Agreement 32–33.) Plaintiffs propose no mechanism for those opting in to an FLSA collective "to file proof of their consent to join the action on the docket, 'affirmatively join the settlement,' and be heard regarding the settlement." *See Vasquez v. A+ Staffing LLC*, 746 F. Supp. 3d 26, 47 (E.D.N.Y. 2024) (quoting *Marichal v. Attending Home Care Servs., LLC*, 432 F. Supp. 3d 271, 280 (E.D.N.Y. 2020)). "Indeed, the Settlement Agreement and accompanying memorandum do

---

[1] Indeed, while Plaintiffs fail to request certification of an FLSA collective, their submissions to the Court are rife with recognition of the need for an FLSA collective and the fact that a party must actually opt in to the Action to release their FLSA claims. (*See, e.g.*, Pls.' Mem. 6 ("The Class Members' release under the Agreement is properly limited only to the asserted claims: . . . for the FLSA Class Members who opt in, any acts occurring between July 27, 2020 and June 10, 2026 . . . ."); *id.* at 7 ("Class Members shall be deemed to have forever and fuly released all of their FLSA claims, which are within the scope of the Released Claims, only if they opt-into the FLSA collective action by submitting a timely and valid Claim Form."); Settlement Agreement § 1.24 ("'Preliminary Approval Order' means the order that . . . preliminary certifies under Fed. R. Civ. P. 23 and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ('FLSA') the Class Members for purposes of settlement only . . . ."); Settlement Agreement Ex. A ("Settlement Notice") 4–5 ("[B]y filling out this claim form, you will also be joining this case under the FLSA (this sometimes referred to as 'opting-in')."); *id.* at 5 ("You will . . . only release Pelham Country Club of your claims under the FLSA . . . if you timely submit the Claim Form.").)

not address the requirements of the FLSA at all." *Medina v. NYC Harlem Foods Inc.*, No. 21-CV-1321, 2022 WL 1184260, at *4 (S.D.N.Y. Apr. 21, 2022).

Plaintiffs' failure to request conditional certification of an FLSA collective or otherwise address the requirements of the FLSA is sufficient for the Court to deny Plaintiffs' Motion without prejudice. "However, review of the proposed Agreement reveals several other procedural and substantive issues, each of which further justifies denying the Motion. In the interest of ensuring that any future settlement negotiations or renewed motions for settlement approval in this [A]ction are free of these other concerns, the Court addresses below each of the relevant issues." *Vasquez*, 746 F. Supp. 3d at 42 (citation omitted).

1. Preliminary Approval of Settlement Under *Cheeks*

a. Whether the Settlement Amount is Fair and Reasonable

"[A]lthough [the Court] should perform a *Cheeks* review only after collective members have opted in, [the Court] address[es] the terms of the Settlement Agreement for efficiency to the degree possible . . . ." *Olibares*, 2023 WL 5702595, at *4 (citation omitted). Because the Settlement Agreement purports to dismiss Plaintiffs' FLSA claims (in addition to Plaintiffs' NYLL claims) with prejudice, the Settlement Agreement requires approval of the Court. (*See* Settlement Agreement § 2.9(A) ("Class Counsel will file an unopposed Motion for Final Approval of Settlement, and a Proposed Order Approving the Settlement and Dismissing the Litigation with prejudice . . . .").) Thus, the Court must be satisfied that the Settlement Agreement is fair and reasonable.

The first factor used to determine whether a settlement reviewed pursuant to *Cheeks* is fair and reasonable is "the plaintiff's range of possible recovery." *Wolinsky*, 900 F. Supp. 2d at 335. The Court applies this factor by determining the plaintiff's best possible recovery

(assuming the plaintiffs prevailed on their terms), and assessing whether the settlement amount, after the deduction of attorneys' fees and costs, represents a reasonable proportion of the plaintiff's best possible recovery. *See, e.g.*, *Burgos v. JAJ Contract Furniture Inc.*, No. 23-CV-3739, 2024 WL 3834147, at *3 (S.D.N.Y. Aug. 14, 2024) (finding that a settlement amount was fair and reasonable when the plaintiff's "total unpaid wages amounted to $26,592.13, an equal amount in liquidated damages," and the settlement amount "represent[ed] 29.7% of that best-case figure"); *Pascual v. Three Diamond Diner Corp.*, No. 21-CV-3333, 2023 WL 1518513, at *3 (S.D.N.Y. Feb. 3, 2023) (finding that a settlement amount was fair and reasonable when the amount, after the deduction of attorneys' fees and costs, represented "29% of [the p]laintiffs' total alleged damages"). A settlement amount represents a reasonable percentage of the plaintiff's best possible recovery when it "is a substantial proportion of the maximum possible recovery he identifies." *Beckert v. Ronirubinov*, No. 15-CV-1951, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2025).

Plaintiffs estimate Class Members' best possible recovery to be $1,750,000 ("Plaintiffs' Estimate") (Lipsky Decl. ¶ 10.) Pursuant to the Settlement Agreement, Defendant agrees to pay $230,000 (the "Gross Settlement Amount") to resolve Plaintiffs' claims. (Settlement Agreement § 3.1(A).) Plaintiffs assert that the Gross Settlement Amount represents "approximately 15% of the Class's compensatory damages and statutory penalties." (Lipsky Decl. ¶ 10.) Plaintiffs' Counsel seeks $76,666.67 from the Gross Settlement Amount in attorneys' fees and $5,000 in costs, and allocates $13,350 to Claims Administrator's fees and costs, $5,000 to each named Plaintiff as a Service Payment, and $5,000 to a Reserve Fund, leaving an amount, after deductions, of $109,983.33 (the "Net Settlement Amount"). (*See* Settlement Agreement §§ 1.18, 3.3(A).) Thus, the Net Settlement Amount represents approximately 6.3% of Plaintiffs'

Estimate. While the Court notes that this is on the low end of settlement amounts that are typically approved, assuming Plaintiffs' Estimate is an accurate estimate of Plaintiffs' best possible recovery, and in light of the risks of litigation raised by Plaintiffs, (*see* Lipsky Decl. ¶ 10), it is possible that the Court will nevertheless find the settlement amount fair and reasonable. *See, e.g.*, *Pickard v. OnSite Facility Servs.*, LLC, No. 22-CV-207, 2023 WL 7019256, at *8 (N.D.N.Y. Oct. 25, 2023) (finding reasonable a total settlement amount of 16% of maximum recovery and citing precedent "approving [a] $2.3 million class settlement over objections that the 'best possible recovery would be approximately $121 million'" (quoting *Cagan v. Anchor Sav. Bank FSB*, No. CV-3024, 1990 WL 73423, *34–35 (E.D.N.Y. May 22, 1990))).

However, the Court is unable to accept Plaintiffs' Estimate as a proper calculation of Plaintiffs' best possible recovery and thus is unable to conclude that the Net Settlement Amount is fair and reasonable. The Settlement Agreement is not sufficiently specific with respect to Plaintiffs' Estimate. In particular, Plaintiffs do not describe the methodology used to arrive at their estimate, or the data which was used as a basis for it. (*See generally* Settlement Agreement.) This Court previously has held that "it does not have sufficient information" to determine if a settlement amount is fair and reasonable when a plaintiff "does not provide an explanation of the methodology used to calculate [the] amount, or the underlying data on which the calculation is based." *Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, No. 20-CV-7131, 2021 WL 38264, at *4 (S.D.N.Y. Jan. 5, 2021); *see also Zekanovic v. Augies Prime Cut of Westchester, Inc.*, No. 19-CV-8216, 2020 WL 5894603, at *3 (S.D.N.Y. Oct. 5, 2020) (finding that "the Court does not have sufficient information to determine whether the settlement sum is

fair and reasonable" when the plaintiff "does not provide an explanation of the methodology used to calculate [their estimate], or the underlying data").

b. Good Faith

The Court next turns to the remaining *Wolinsky* factors, which include

> (2) the extent to which the settlement agreement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky*, 900 F. Supp. 2d. at 335 (quotation marks omitted). These factors favor approval of the Settlement Agreement. In assessing the last four *Wolinsky* factors, the Court relies on the representations made by the Parties, including representations made in the Settlement Agreement itself. *See, e.g.*, *Cronk*, 2021 WL 38264, at *5 (finding that the second, fourth, and fifth *Wolinsky* factors were satisfied based on the parties' representations); *Rojas*, 2018 WL 4931540, at *3 (finding that the second *Wolinsky* factor was satisfied based on the parties' representations).

First, the Court is satisfied that the settlement will enable the parties to avoid the anticipated burdens and risks of litigation. According to its terms, "the purpose of [the] Agreement is to settle fully and finally all wage claims, among the Named Plaintiffs, Class Members and the Defendant . . . in order to avoid the burden, expense, and uncertainty of continuing the Litigation . . . ." (Settlement Agreement 2); *see Rojas*, 2018 WL 4931540, at *3 (finding that the second *Wolinsky* factor was met when there were "fact-intensive disputes between the Parties" and that settlement "prevent[ed] the [p]arties from the risks associated with going to trial"). Second, the seriousness of the litigation risks faced by the Parties favors approval. Plaintiffs' counsel notes that both parties were likely to move for summary judgment, and that "even if the Court denied Defendant's motion for summary judgment, the Court may

subsequently deny Plaintiffs' class certification motion, and that, even if certification were granted, Plaintiffs and the class members might not have prevailed on any or all of their claims." (Lipsky Decl. ¶ 12.) "Plaintiffs' Counsel also considered the high likelihood that Defendant would appeal any adverse rulings, which would, at a minimum, substantially delay any recovery and present a risk that such adverse rulings would be reversed." (*Id.*) Third, the Court is satisfied that the Settlement Agreement is the product of arm's-length bargaining between experienced counsel as it states that "[t]he Parties have negotiated all the terms and conditions of this Agreement at arms' length." (Settlement Agreement § 5.6.) Fourth, the Court is satisfied that there was no fraud or collusion because neither Party has indicated as such and the Settlement Agreement appears to be the product of extensive settlement discussions between experienced counsels. (*See* Lipsky Decl. Ex. A 3 (listing several wage and hour actions prosecuted by Plaintiffs' counsel)); *Burgos*, 2024 WL 3834147, at *3 (finding that there was no fraud or collusion when a settlement "was reached over several weeks of negotiations between counsel experienced in wage-and-hour disputes").

c. Release Provision

The Court "will not approve settlement agreements that contain overly broad release provisions . . . ." *Cronk*, 2021 WL 38264, at *5; *Rojas*, 2018 WL 4931540, at *3 (same). A release provision is overly broad when it would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues . . . ." *Cheeks*, 796 F.3d at 206 (quotation marks omitted) (quoting *Lopez*, 96 F. Supp. 3d at 181); *see also Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action."). A

release provision "may include claims not presented and even those which could not have been presented, but only when the released conduct arises out of the identical factual predicate as the settled conduct." *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751, 2017 WL 2778029, at *3 (E.D.N.Y. June 26, 2017) (quoting *Lopez*, 96 F. Supp. 3d at 181); *Pascual*, 2023 WL 1518513, at *4 (same).

Here, the Settlement Agreement's release provision provides that:

> (A) Named Plaintiffs and all Rule 23 Class Members, who do not opt-out of the Settlement, fully release and discharge Defendant and Releasees for all claims they have against them, for the period of July 27, 2017 to June 10, 2026, relating to (i) failing to pay the minimum wage under the New York Labor Law, (ii) failing to pay overtime premium pay under the Labor Law, (iii) failing to pay the spread-of-hours pay under the Labor Law; (iv) failing to provide the N.Y. Lab. Law § 195.1 notice; and (v) failing to provide the N.Y. Lab. Law § 195.3 wage statements. This Release of Claims includes all forms of relief, including liquidated damages, penalties, attorneys' fees, restitution and equitable relief.
>
> (B) Named Plaintiffs and all FLSA Class Members, who timely submit a Claim Form and thereby opt-in into the FLSA collective action, fully release and discharge Defendant and Releasees for all claims they have against them, for the period of July 27, 2020 to June 10, 2026, relating to (i) failing to pay the minimum wage under the FLSA and (ii) failing to pay overtime premium pay under the FLSA. This Release of Claims includes all forms of relief, including liquidated damages, penalties, attorneys' fees, restitution and equitable relief.
>
> (C) With respect to both Rule 23 Class Members and FLSA Class Members, the above-defined scope of claims released includes all claims, whether arising under federal, state, local or other applicable law, that are based upon federal, state or local laws governing minimum wage, overtime pay, wage payments, spread-of-hours payments, failure to pay for all hours worked, failure to provide wage statements and/or wage notices, failure to keep appropriate timekeeping and payroll records, or otherwise arising out of or relating to the facts, acts, transactions, occurrence, events or omissions alleged in the Litigation or which could have been alleged in the Litigation.

(Settlement Agreement § 4.1 (the "Release Provision").) The Release Provision is overly broad. Subsections (A) and (B) each limit the release to the specific kinds of claims at issue in this Action during the proposed class periods but are not limited to claims that share an identical

factual predicate with the claims listed in the SAC. Furthermore, Subsection (C) makes clear that the "scope of claims released" includes claims arising out of "facts, acts, transactions, occurrence, events or omissions . . . which could have been alleged in the Litigation." If any of the named Plaintiffs or another member of a proposed FLSA collective has an FLSA claim that is not at issue in this Action and does not share a factual predicate with any claim asserted in this Action, but is based on facts that *could* have been alleged in this Action, it would be waived under the terms of the Release Provision. In sum, while the Release Provision contains some limitations, it is not narrow enough for a settlement agreement governed by *Cheeks*.

d. Attorneys' Fees

"Under both [the] FLSA and the [NYLL], a successful plaintiff—including one who settles—is entitled to attorneys' fees." *Rojas*, 2018 WL 4931540, at *4; *see also Lizondro-Garcia v. Kefi LLC*, No. 12 -CV-1906, 2015 WL 4006896, at *2 (S.D.N.Y. July 1, 2015) ("Under the FLSA, a court shall, in addition to any judgment awarded to the plaintiff . . . allow a reasonable attorney's fee to be paid by the defendant . . . [and the NYLL] also provides that a successful plaintiff may recover attorneys' fees . . . ." (quotation marks omitted)). The fee award may be a percentage of the total amount recovered by the plaintiff. *See Burgos*, 2024 WL 3834147, at *4 (awarding attorneys' fees when the plaintiff's counsel sought a fee award representing one-third of the settlement amount); *Rojas*, 2018 WL 4931540, at *4 (holding that "one-third of the settlement sum, is a reasonable fee"). However, even when attorneys' fees are sought as a proportion of the amount recovered by the plaintiff, "counsel must submit evidence providing a factual basis for the award." *Wolinsky*, 900 F. Supp. 2d at 336; *see also Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time

records."). Specifically, a request for attorneys' fees should include "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Burgos*, 2024 WL 3834147, at *4 (quoting *Lopez*, 96 F. Supp. 3d at 181); *see also Rojas*, 2018 WL 4931540, at *4 (same). Further, "courts must independently assess the reasonableness of [the] plaintiff's attorney's fees, even when the fee is negotiated as part of the settlement." *Cegueda-Juarez v. Cleanwear USA 2, Inc.*, No. 18-CV-1604, 2019 WL 5485253, at *2 (S.D.N.Y. Oct. 25, 2019) (citing *Lazaro-Garcia*, 2015 WL 9162701, at *3).

Plaintiff's counsel is seeking $76,666.67 in attorneys' fees. (*See* Settlement Agreement § 3.3(A).) Pursuant to the Settlement Agreement, the fee award would be deducted from the Gross Settlement Amount. (*See id.* § 1.18.) The fee award sought by Plaintiff's counsel represents approximately one-third of the Gross Settlement Amount. (*See id.* § 3.3(A).) While "courts in the Second Circuit routinely award attorney fees in FLSA cases of approximately one-third of the total recovery[,]" *Burgos*, 2024 WL 3834147, at *4 (citations omitted), this Court has denied fee awards representing one-third of the total recovery when the amount would be unreasonable, *see, e.g.*, *Cegueda-Juarez*, 2019 WL 5485253, at *2 (denying a fee award of one-third of the settlement amount when the amount would constitute an "oversized award"). Here, Plaintiff has submitted no factual basis for the requested fee award. Specifically, Plaintiff has not provided contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done. (*See generally* Dkt.) Consequently, the Court is unable to independently assess whether, in this Action, a fee award representing one-third of the Settlement Amount is reasonable.

2. Conditional Certification of the Settlement Class

a. Legal Standard for Class Certification

For the purposes of effectuating the Settlement Agreement, Plaintiff seeks conditional certification of a "Rule 23 Class" comprised of "[n]amed Plaintiffs and all individuals who worked as golf caddies at Pelham Country Club from July 27, 2017 to June 10, 2026." (Settlement Agreement § 1.5(a).) However, "the existence of a settlement does not mandate certification." *Fraticelli v. MSG Holdings, L.P.*, No. 13-CV-6518, 2018 WL 3217410, at *4 (S.D.N.Y. July 2, 2018). "Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of [Federal] Rule [of Civil Procedure] 23(a) and (b) have been met." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 489 (S.D.N.Y. 2018) ("Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied."). Under Federal Rule of Civil Procedure 23(a) ("Rule 23"):

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[2]

Fed. R. Civ. P. 23(a). The party seeking class certification bears the burden of proving that the proposed class meets each of the requirements of Rule 23(a) by a preponderance of the evidence. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d

[2] The requirements of Rule 23(a)(1)–(4) are often referred to, and will be referred to herein, as the (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy requirements.

Cir. 2008) (holding that "the preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements"). "If each of these four threshold requirements are met, class certification is appropriate if the action also satisfies one of the three alternative criteria set forth in Rule 23(b)." *Fraticelli*, 2018 WL 3217410, at *3.

b. Rule 23(a)

The Settlement Class meets the four threshold requirements imposed by Rule 23(a). First, the Class satisfies the numerosity requirement. "The numerosity requirement of Rule 23(a)(1) is presumed satisfied for classes with more than [40] members." *Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 362 (S.D.N.Y. 2014) (citation omitted); *In Re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 235 (S.D.N.Y. 2015) ("numerosity is presumed when a class consists of 40 or more members") (quotation marks and citation omitted). Here, "the class size is more than 70 persons." (Lipsky Decl. ¶ 4.) Consequently, the numerosity requirement is presumptively satisfied, and "Defendant has agreed, for settlement purposes only, to class certification under Federal Rules of Civil Procedure 23(a) and (b)." (Settlement Agreement 2.)

Second, the Settlement Class satisfies the commonality requirement. To satisfy the commonality requirement, class members' claims must "depend upon a common contention" that is "capable of classwide resolution . . . ." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, Plaintiffs assert that "Pelham Country Club has acted or refused to act on grounds generally applicable to the Class Members." (SAC ¶ 158.) This is a common contention, capable of classwide resolution, that Plaintiffs' claims depend upon. For example, the factual basis for Plaintiffs' First through Fifth Causes of Action is that Defendant, in violation of the NYLL, "failed to pay Plaintiffs . . . and the Class members overtime premium pay for any hour they worked above 40 in a week," (SAC ¶ 172), "failed to pay Plaintiffs . . . and the Class

Members the minimum wage," (SAC ¶ 181), "failed to pay Plaintiffs . . . and the Class Members one additional hour at the minimum wage rate for each day they worked ten or more hours," (SAC ¶ 185), "failed to supply Plaintiffs . . . and the Class Members with the required Notice and Acknowledgement of Pay Rate and Payday," (SAC ¶ 188), and "failed to supply Plaintiffs . . . and the Class Members with an accurate wage statement with each payment of wages," (SAC ¶ 191). Consequently, Plaintiffs' First through Fifth Causes of Action depend upon the common contention that it was Defendant's policy and practice not to pay Plaintiffs and the Class Members in accordance with the NYLL while they were working for Defendant as golf caddies, and if Plaintiffs are able to prove the existence of such a policy and practice, it would drive the classwide resolution of Plaintiffs' NYLL claims. *Cf. Ramirez*, 39 F. Supp. 3d at 363 (holding that "[t]he common contention of a classwide policy of denying compensation for pre- and post-shift on-the-clock work" was "sufficient to satisfy the commonality requirement of Rule 23(a)(2)").

Third, the Settlement Class satisfies the typicality requirement. "The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). However, "[t]he central inquiry in a typicality evaluation is whether 'each class members['] claims arise from the same course of events and each class member makes similar legal arguments to prove [the] defendant's liability.'" *Espinoza v. 953 Assocs., LLC*, 280 F.R.D. 113, 127–128 (S.D.N.Y. 2011) (quoting *Velez v. Majik Cleaning Serv., Inc.*, No. 03-CV-8698, 2005 WL 106985, at *2 (S.D.N.Y. Jan. 19, 2005)). Here, the claims of Plaintiffs and each Class Member arise from the same course of events because the claims arise from the same policies and practices attributed to Defendant. The allegation that those common policies and practices violate provisions of the NYLL is a legal argument that bears on

Defendant's liability that is common to the claims of each Class Member. *Cf. Espinoza*, 280 F.R.D. at 128 (holding that the typicality requirement was satisfied when "the minimum wage and overtime claims alleged by [the] [p]laintiffs [were] similar to those of the class members and ar[o]se from the same allegedly unlawful practices and policies").

Fourth, the Settlement Class satisfies the adequacy requirement. The adequacy requirement is assessed "by looking to the qualifications of [the] plaintiff's counsel" and "by examining the interests of the named plaintiffs." *Flores v. Anjost Corp.*, 284 F.R.D. 112, 129 (S.D.N.Y. 2012) (citing *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d. Cir. 2000)). Here, Plaintiff's counsel is sufficiently qualified to satisfy the adequacy requirement. In particular, Plaintiffs' counsel "has extensive experience prosecuting class and collective actions." (Lipsky Decl. ¶ 2.) Plaintiffs' counsel cites several cases as evidence of its experience, five of which were prosecuted in this District. (Lipsky Decl. Ex. A 3.) *Cf. Ramirez*, 39 F. Supp. 3d at 365 (finding the plaintiff's counsel was sufficiently qualified to satisfy Rule 23(a)(4)'s adequacy requirement when they had "pursued a number of similar actions and vigorously litigated the action before th[e] [c]ourt"). Next, when assessing the interests of the named plaintiffs, the Second Circuit has held that "the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney*, 443 F.3d at 268. Here, Plaintiffs have an interest in vigorously pursuing the claims of the Class because, the Court presumes, Plaintiffs would like to recover for their own injuries. Neither this interest, nor any other interests attributable to Plaintiffs, puts Plaintiffs in a position that is antagonistic to the other class members.

c. Rule 23(b)

Of the three alternative criteria provided by Rule 23(b), Plaintiff points to Rule 23(b)(3) as a proper basis for certification of the Settlement Class. (*See* Not. of Mot. for Prelim. Approval 1; Pls.' Mem. 20.) Rule 23(b)(3) is satisfied when:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). In sum, Rule 23(b)(3) contains two prongs, a predominance requirement and a superiority requirement. *See Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 67–68 (S.D.N.Y. 2018) (distinguishing between the predominance and superiority requirements expressed in Rule 23(b)(3)). When assessing the predominance requirement, "the inquiries into commonality, typicality, and predominance [often] overlap . . . ." *Wynn v. N.Y.C. Hous. Auth.*, 314 F.R.D. 122, 128 (S.D.N.Y. 2016). However, the Supreme Court has held that "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). The Second Circuit has held that "the [predominance] requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)). When assessing the superiority requirement, courts have held that "a class action is superior [when] . . . potential class members are aggrieved by the

same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by the defendants." *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 126 (S.D.N.Y. 2014) (citing *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05-CV-4116, 2007 WL 103073, at *9 (S.D.N.Y. Jan. 12, 2007), and *Torres v. Gristede's Operating Corp.*, No. 04-CV-3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006)).

Here, the Class satisfies the predominance requirement because the factual and legal questions common to each class member predominate over any factual or legal questions affecting only individual class members. Plaintiffs have identified at least ten common questions of law and fact that predominate, including, inter alia, "[w]hether Pelham Country Club failed or refused to pay the Class Members the statutory minimum wage," "[w]hether Pelham Country Club failed or refused to pay the Class Members overtime premium pay for all hours worked in excess of 40 hours per workweek," "[w]hether Pelham Country Club failed or refused to pay the Class Members spread-of-hours pay," "[w]hether Pelham Country Club failed or refused to provide the Class Members the N.Y. Lab. Law § 195.1 Notice," and [w]hether Pelham Country Club failed or refused to provide the Class Members the N.Y. Lab. Law § 195.3 Wage Statements." (SAC ¶ 161.) These are the predominant factual questions implicated by Plaintiffs' First through Fifth Causes of Action and are common to each class member. Similarly, whether each of these actions constitutes a violation of the NYLL is the predominant legal question implicated by each of Plaintiffs' First through Fifth Causes of Action and is common to each class member. In sum, the Court agrees that "Plaintiffs allege Defendant had a uniform policy" applicable to all class members and that "[g]eneralized proof is, therefore, more than sufficient to determine Defendant's liability, satisfying the predominance requirement." (Pls.' Mem. 20–21.)

The Settlement Class also satisfies the superiority requirement because a class action is superior to any other method for fairly and efficiently adjudicating the Action. The class members are aggrieved by the same policy. While Plaintiffs' Second Amended Complaint does not assert that damages suffered by each class member are small in comparison to the expense and burden of individual litigation, Plaintiffs correctly note that "particularly in the context of wage and hour litigation[,] . . . individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in court against a corporate defendant." (SAC ¶ 157.) Consequently, the expense and burden of individual litigation may dissuade class members from prosecuting their claims in the absence of a class action.

3. Appointment of Plaintiff's Counsel as Class Counsel

Plaintiffs seek appointment of Plaintiffs' counsel as class counsel. Under Rule 23(g)(1), "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). When appointing class counsel, the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class . . . .

Fed. R. Civ. P. 23(g)(1)(A). However, the court may also "consider any other matter pertinent to [class] counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

The factors expressed in Rule 23(g)(1) support the appointment of Plaintiff's counsel as class counsel. First, "Plaintiffs' Counsel thoroughly investigated the events and transactions underlying Plaintiffs['] and the Class Members' claims. (Pls.' Mem. 3.) "This included interviewing the Named Plaintiffs about their duties, hours worked, the wait time for which they

were not compensated, the bag fees and tips they received from golfers, Defendant's classification of them as independent contractors, and the notices and wage statements they did not receive." (*Id.*) Plaintiffs' counsel also "thoroughly explored [these claims] during the parties' arm's-length settlement negotiations, during which Plaintiffs' Counsel received information from Defendant relevant to Plaintiffs['] and the Class Members' claims." (*Id.*) In sum, Plaintiffs' counsel has done significant work to identify and investigate the claims in this Action. As noted above, Plaintiffs' counsel has significant experience in handling class actions, including wage and hour disputes similar to this Action. *See supra* Section II(B)(2)(b) ("Plaintiffs' counsel cites several cases as evidence of its experience, five of which were prosecuted in this District."). Third, given their significant experience, the Court is satisfied that Plaintiffs' counsel has sufficient knowledge of the applicable law.

4. Preliminary Approval of Settlement Under Rule 23(e)

Under Rule 23(e), the "claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The court must provide preliminary approval of the settlement, after which "notice of a hearing is given to the class members, where class members and settling parties are provided the opportunity to be heard on the question of final approval[,]" prior to final approval of a settlement under Rule 23(e). *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 7625708, at *2 (citing *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)). At the preliminary approval stage, "[t]he [c]ourt must consider whether it will likely be able to . . . 'approve the proposal under Rule 23(e)(2).'" *Whelan v. Diligent Corp.*, 349 F.R.D. 79, 84 (S.D.N.Y. 2025) (citing *In re Payment Card Interchange Fee & Merchant*

*Discount Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019)); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (same). Under Rule 23(e)(2):

> [T]he court may approve [the settlement] only . . . on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Court is satisfied that most of the Rule 23(e)(2) factors support preliminary approval of the Settlement Agreement. First, Rule 23(e)(2)(A)'s adequacy requirement overlaps with Rule 23(a)(4)'s adequacy requirement. *See Whelan*, 349 F.R.D. at 84–85 (describing the requirements of Rule 23(e)(2)(A)). Here, the adequacy requirement is satisfied. *See supra* Section II(B)(2)(b) (finding that the adequacy requirement is satisfied due to the qualifications of Plaintiff's counsel, Plaintiff's interest in vigorously litigating the Action, and Plaintiff's lack of interests antagonistic to class members). Second, the Court is satisfied that the proposal was negotiated at arm's length. *See supra* Section II(B)(1)(b) ("[T]he Court is satisfied that the Settlement Agreement is the product of arm's-length bargaining between experienced counsel . . . ."). Third, the Court is satisfied that the proposal treats the class members equitably. This Court has held that an allocation formula treats class members equitably when it turns on "objective, ascertainable, and fair characteristics," including "class members' verified harms and their available causes of action." *Whelan*, 349 F.R.D. at 87. Pursuant to the Settlement Agreement, all class members will be paid according to the same formula, with each Class Member's portion of the settlement based on the number of rounds they caddied during the class

period. (*See* Settlement Agreement § 3.6(B) (providing that each individual caddy's portion of the Net Settlement Fund will be the total number of self-reported rounds caddied by the individual caddy divided by the Club's estimate of the total number of rounds caddied by all caddies).) Consequently, the allocation formula turns on objective, ascertainable, and fair characteristics, namely the extent of the injury each member of the Settlement Class suffered.

However, the Court is unable to determine whether the relief provided to the Settlement Class is adequate under Rule 23(e)(2)(C). The analysis of the Settlement Agreement's compliance with Rule 23(e)(2)(C) overlaps with the Court's analysis of the Settlement Agreement's compliance with *Cheeks*. When assessing Rule 23(e)(2)(C), the Court considers, among other factors, the proportion of a plaintiff's maximum possible recovery provided by the settlement amount, and how that proportion compares to settlement agreements which have previously been approved in the Second Circuit. *See, e.g.*, *Piney v. City of New York*, No. 25-CV-671, 2026 WL 1345920, at *8 (S.D.N.Y. May 14, 2026) (finding that a settlement agreement satisfied Rule 23(e)(2)(C) in part because the settlement amount represented 65% of the plaintiff's maximum possible recovery, which was comparable to the recovery in other settlements approved within the Second Circuit); *Marin v. 310 Bowery Grp. LLC*, No. 24-CV-1340, 2025 WL 893731, at *7 (Mar. 24, 2025) (finding that a settlement agreement satisfied Rule 23(e)(2)(C) in part because the settlement agreement represented 17% of the plaintiff's maximum possible recovery, which was comparable to the recovery in other settlements approved within the Second Circuit). Generally, courts favor a settlement that "results in substantial and tangible present recovery." *Piney*, 2026 WL 1345920, at *8 (quoting *Sykes v. Harris*, No. 09-CV-8486, 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016)). Plaintiffs argue at length that the Settlement Agreement is fair, reasonable, and adequate based on the nine

*Grinnell* factors. (*See* Pls.' Mem. 11–16 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).) However, the Court is unable to determine what proportion of Plaintiffs' maximum possible recovery the Net Settlement Amount accounts for because the Settlement Agreement is not sufficiently specific with respect to Plaintiffs' Estimate. *See supra* Section II(B)(1)(a) ("Plaintiffs do not describe the methodology used to arrive at their estimate, or the data which was used as a basis for it.").

5. Provisional Certification of the FLSA Collective

As discussed above, while the Settlement Agreement contemplates two separate *classes*, a "Rule 23 Class" and an "FLSA Class," Plaintiffs do not request certification of an FLSA collective under Section 216 of the FLSA or address the requirements for settlement approval under the FLSA. *See supra* Section II(B) ("Plaintiffs' failure to request conditional certification of an FLSA collective or otherwise address the requirements of the FLSA is sufficient for the Court to deny Plaintiffs' Motion without prejudice.").

To the extent that the Parties seek to discharge both the NYLL claims and FLSA claims of class and collective members, "[w]hen dealing with proposed settlements in so-called hybrid actions, courts employ a two-step procedure that simultaneously accounts for the requirements of both the FLSA and Rule 23 of the Federal Rules of Civil Procedure." *See Vasquez*, 746 F. Supp. 3d at 45. "At step one, the parties file a motion for conditional certification of both an FLSA collective action and a Rule 23 class action, preliminary approval of the proposed settlement, and approval of the proposed notice." *Id.* (laying out the Court's tasks at step one, including determining whether Rule 23 is likely to be satisfied, whether conditional certification of the FLSA collective is warranted, whether the settlement is fair as a preliminary matter under *Cheeks*, and whether the proposed notice satisfies both Rule 23 and the FLSA). If the Court

approves the Parties' submissions, an FLSA opt-in and Rule 23 opt-out period may follow. *See id.* (providing that those joining the collective have the opportunity to file written objections). "Once the opt-in/opt-out period has ended, the parties collect information on the putative collective and class and seek final approval of the settlement, at which point the court conducts a 'final fairness hearing.'" *Id.* at 47 (laying out the Court's tasks following the hearing, including final findings under Rule 23, the FLSA, and *Cheeks*).

Because the Parties fail to seek conditional certification of an FLSA collective or otherwise address the requirements of the FLSA, Plaintiffs' Motion is denied without prejudice. The Parties are advised that if they seek approval of a "hybrid" settlement, they must comply with the FLSA, including the requirement that "each opt-in plaintiff is 'given an opportunity' to file proof of their consent to join the action on the docket, 'affirmatively join the settlement,' and be heard regarding the settlement." *Id.* (quoting *Marichal v. Attending Home Care Servs., LLC*, 432 F. Supp. 3d 271, 280 (E.D.N.Y. 2020)).

6. Notice

Plaintiffs seek approval of their notice of settlement. (*See* Settlement Agreement Ex. A (the "Settlement Notice").) Under Rule 23(c)(2)(B), for classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Further, the notice must describe:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3).

*Id.* In sum, the settlement notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Whelan*, 349 F.R.D. at 90 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir. 2005), *superseded on other grounds by Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023)); *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 191 (S.D.N.Y. 2012) (same).

The Settlement Notice satisfies all but the fourth requirement of Rule 23(c)(2)(B). First, the Settlement Notice describes the nature of the Action, stating that "[f]ormer golf caddies . . . filed the Action against Pelham Country Club asserting that it violated the Fair Labor Standards Act and New York Labor Law by (i) failing to pay the minimum wage, and (ii) failing to pay overtime premium pay, and (iii) failure to pay spread of hours pay, and (iv) failure to provide an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment, in violation of New York Labor Law." (Settlement Notice 2.) Second, the Settlement Notice defines the Class, as the Settlement Notice is addressed to "all individuals who were golf caddies at Pelham Country Club at any time between July 27, 2017 and June 10, 2026." (*Id.* 1.) Third, the Settlement Notice provides additional information regarding the issues faced by the Settlement Class, including that the Settlement Agreement "avoid[s] further disputes, inconvenience, and expense." (*Id.* 2.) With regard to the fourth requirement, however, the Settlement Notice does not specify that class members are entitled to be represented by their own attorney. Fifth, the Settlement Notice informs class members that they "have the option of 'opting-out' of the Settlement Agreement." (*Id.* 5.) Sixth, the Settlement notice advises that class members can opt out by "mail[ing] a letter that specifically states, 'I ELECT TO EXCLUDE MYSELF FROM THE SETTLEMENT IN LEWIS, ET AL. V. PELHAM COUNTRY CLUB, No. 7:23-cv-06500

(KMK)'" by a specified date to the Claims Administrator. (*Id.* 5.) Lastly, the Settlement Notice informs class members of the binding effect of a class judgment. (*See id.*) Overall, the Court is satisfied that the Settlement Notice satisfies the requirements of Rule 23(c)(2)(B), except that it fails to advise "that a class member may enter an appearance through an attorney if the member so desires." Fed. R. Civ. P. 23(c)(2)(B)(iv).

The Settlement Notice also fails to comply with the FLSA, because it "does not accurately inform employees of their rights to opt into the litigation," including that "any person choosing to be part of the collective (1) must consent in writing and (2) file his consent on the docket." *Olibares*, 2023 WL 5702595, at *4. Once again, "[t]he Settlement Agreement and accompanying memorandum do not address the opt-in requirements of FLSA collective actions or the required procedure for approval pursuant to § 216(b) at all." *Id.*

## III. Conclusion

For the reasons set forth above, Plaintiffs' Motion is denied without prejudice. The Parties are to submit a revised settlement agreement or a letter advising the Court that they intend to abandon settlement within 30 days of the date of this Order. The Clerk of Court is respectfully directed to terminate the pending Motion at Dkt. No. 68.

SO ORDERED.

Dated: November 20, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge